CAMILLA TWIN HARBOR VOLUN-
TEER FIRE DEPARTMENT,
INC., Appellant,

v.

Leroy PLEMMONS and Time Land
Company, Appellees.

No. 09–99–136 CV.

Court of Appeals of Texas,
Beaumont.

Submitted July 14, 1999.

Decided Aug. 26, 1999.

Rehearing Overruled Nov. 4, 1999.

**414**

Robert F. Atkins, Coldspring, for appellant.

Gene Bush, Livingston, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

This is an appeal brought by the Camilla Twin Harbor Volunteer Fire Department, Inc. ("Fire Department") from a bench trial wherein the trial court granted an injunction preventing the Fire Department from using a roadway abutting its property. The Fire Department initiated this suit seeking temporary and permanent injunctions restraining Leroy Plemmons and Time Land Company, a partnership composed of Mike R. Parker and Terry White ("appellees"), from interfering with the Fire Department's use of the abutting roadway. The appellees counter-claimed asking for a permanent injunction prohibiting the Fire Department's use of the roadway. The trial court found the roadway to be a private road. The court's judgment provides the Fire Department is to have the authority to use the roadway for a period of ten months after which its rights cease and it is thereafter enjoined from using the road. As submitted by the Fire Department, the sole question on appeal is whether the Fire Department has ingress or egress rights along the abutting road.

In a bench trial, the granting or refusal of a permanent injunction is within the sound discretion of the trial court. *See Isuani v. Manske–Sheffield Radiology Group, P.A.*, 805 S.W.2d 602, 606 (Tex. App.—Beaumont 1991, writ denied). On appeal, a review of the trial court's action is limited to the question of whether such action constituted an abuse of discretion. *Id.* at 606–07. A trial court may be reversed for abusing its discretion only if the court "acted in an unreasonable or arbitrary manner" or " 'without reference to any guiding rules and principles.' " *Beau-*

*mont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991) (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). "[T]he court of appeals may not reverse for abuse of discretion merely because it disagrees with a decision by the trial court, if that decision was within the trial court's discretionary authority." *Id.* "Under the abuse of discretion standard, legal and factual sufficiency of the evidence, although not independent grounds for asserting error, are relevant facts in assessing whether the trial court abused its discretion." *In the Interest of A.D.H.,* 979 S.W.2d 445, 446 (Tex.App.—Beaumont 1998, no pet.); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied).

▆▆ Before entering into our discussion of the evidence relating to the road involved, we state, very generally, the rule relating to the establishment of public roads:

> All roads which have been laid out and established by authority of the commissioners' courts are public roads. A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with the assent of the owner or by prescription. *A road may also become public in the sense that the public have the right to use it, by dedication.*

*Worthington v. Wade,* 82 Tex. 26, 17 S.W. 520 (1891) (emphasis added) (citation omitted). In the instant case, there was no evidence tending to prove that the road in question had been established or laid out by the Commissioners' Court. Where no statute is applicable, common law controls. Under the common law, an owner of private property can either expressly or impliedly make known his intention to dedicate a road.

> The intention to dedicate must be shown by something more than an omission or failure to act or acquiescence on the part of the owner. The establishment of facts constituting dedication cannot be left to conjecture and when the asserted dedication rests in estoppel, the evidence should clearly and satisfactorily establish the necessary facts. *Henderson v. Frio County,* 362 S.W.2d 406 (Tex.Civ. App.—San Antonio 1962, writ ref'd n.r.e.).

> "Since, by a dedication, valuable rights in land pass from the owner, no presumption of an intent to dedicate arises, unless it is clearly shown by his acts and declarations, or by a line of conduct, the only reasonable explanation of which is that a dedication was intended." *International & G.N.R. Co. v. Cuneo,* 47 Tex. Civ.App. 622, 108 S.W. 714, 716–17 (1908, no writ).

*Lee v. Uvalde County,* 616 S.W.2d 367, 372 (Tex.Civ.App.—Tyler 1981, no writ) (some citations omitted). "Generally, an express dedication is accomplished by deed or a written document." *Gutierrez v. County of Zapata,* 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ). The question of whether a roadway has been acquired by implied dedication is a question of fact. *See Lindner v. Hill,* 691 S.W.2d 590, 591 (Tex.1985); *Lee,* 616 S.W.2d at 372. Implied dedication requires a clear and unequivocal intention on the part of the landowner to appropriate the land to public use, along with an acceptance by the public. *Gutierrez,* 951 S.W.2d at 838; *see also Eastex Wildlife Conservation Ass'n v. Jasper,* 450 S.W.2d 904, 913 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.) (unless landowner "intended to dedicate the land absolutely and irrevocably to the use of the public," plaintiffs could not prevail under theory of implied dedication).

▆▆ The parties stipulated that W.B. Etheridge, II is the common source of title to the acreage with the disputed roadway; hence, there is no title dispute to the property. The only issue is in regards to the Fire Department's use of the road. At the time of conveyance of a 25.2739 acres tract of land to Etheridge, a plat of Paradise Cove, a subdivision neighboring the

25.2739 acres, was of record in the San Jacinto County clerk's office. When the plat was prepared for the subdivision, there was a problem with access to the subdivision. To solve this problem, the plat depicted a proposed entrance road across the 25.2739 acres. Later in time, a new roadway was created, and it took the place of the original proposed roadway across the 25.2739 acre tract.

On January 23, 1992, Etheridge donated a 0.737 acre tract of land to the Fire Department. This tract of land was carved out of the 25.2739 acres tract. The 0.737 acre tract has approximately 205 feet of frontage access to a farm to market road, and abuts the original Paradise Cove proposed road on its southwestern border.[1] Although neither the deed, nor the field note description indicates a conveyance of an easement to the Fire Department, Etheridge gave the Fire Department permission to use the abutting roadway. In an unrecorded letter, Etheridge described the donation of the property and stated his intent regarding the Fire Department's use of the abutting road. The letter states, "It is my understanding that the Camilla Voluntary Fire Department will insure that the entrance road and the first (300) feet into my 25.2739 acre tract are maintained."

The Fire Department erected a firehouse on the property in 1994. The front entrance to the firehouse is accessed by the proposed roadway. The Fire Department has continuously used the roadway as the entrance to its building. In addition, the Fire Department laid a concrete slab for its entrance. Although the chief of the Fire Department testified the slab extends over the boundary line by only "a couple of feet," a survey of the property reveals the concrete extends fourteen feet beyond the department's boundary line.

By Warranty Deed dated December 31, 1995, Etheridge conveyed to Time Land Company 26.029 acres of land; this tract of land included the residual of the original 25.2739 acres. Perry White, a partner of Time Land Company, testified that, when the land was purchased, he was not aware that the Fire Department was using the road. He also testified the proposed roadway was never used as an entrance to the Paradise Cove Subdivision, and never became part of the county road system. The metes and bounds description attached to Time Land Company's deed, prepared as a result of a survey conducted in November of 1995, states there are no "apparent easements or rights of way, except as shown on the plat." The plat contains a sketch of the road in question, however the road is labeled with the following notation: "Original Entrance Road to Paradise Road (now abandoned)."

In 1996, Plemmons entered into a Contract for Deed agreement with Time Land Company to purchase two five-acre tracts of land out of the original 25.2739 acres. One of these five-acre tracts borders the Fire Department's property and encompasses the roadway in question. The Contracts for Deed state that upon payment of the full purchase price and interest, the property will be conveyed to Plemmons by a General Warranty Deed subject to all covenants, easements, and restrictions now on record in the county clerk's office. Plemmons testified when he bought the property, he was aware that the Fire Department was using the roadway as an entrance.

James Lowe, a registered surveyor who conducted both the original survey and the November 1995 survey, testified regarding the proposed roadway. Lowe stated that when he performed the original survey, the original proposed road had been cleared, but had not been paved. When he surveyed the property in 1995, the roadway was not passable and was not being used for vehicular traffic. In his search of

---

1. Significant in the description of the tract is the call for the boundary of the property "to a point for a southern corner of this tract at the intersection of the Northeast *right of way of a subdivision entrance road* [.]" (emphasis added).

the county clerk's records, performed as part of the survey, Lowe did not find any recorded easements on the 25.279 acres. Lowe considered the roadway to be an abandoned, private road. On his survey plat, Lowe designated the road as abandoned.

 The Fire Department's sole argument on appeal is that if the road had been abandoned, the Fire Department would still own the property up to the center of the road. It makes this contention by virtue of the presumption that a conveyance of land adjoining a street or highway is presumed to carry with it the fee to the center of the street or highway.[2] The Fire Department quotes *Texas Jurisprudence* as support for this legal proposition:

> As a general rule, unless otherwise declared in the grant, the owner of land abutting on a street, alley, or *public* highway owns the fee to the center of the thoroughfare in question, subject only to an easement existing in favor of the public to a right of passage. The public right is ordinarily but an easement whether the roadway is dedicated by owner, established by prescription, or acquired by condemnation.

43 Tex. Jur.3d Highways and Streets § 116 (emphasis added). The Fire Department has cited no authority that this legal concept applies to a private road; as such we decline to accept this proposition. Regardless of how laudable or commendable the purpose of the acquisition, such a finding would result in the appropriation of private property for public use without compensation to the landowner. Such an

appropriation would be prohibited under article 1, section 17 of the Texas Constitution. Tex. Const. Art. I, § 17; *Gutierrez*, 951 S.W.2d at 838.

We conclude there was no express or implied dedication of the roadway as a public road. Applying the rules of law set forth in the cases discussed and deferring to the fact finder, we find no factual evidence of probative force in the record which would support a finding of a public road. We affirm the trial court's decision that the road is a private road. Reviewing this case under an abuse of discretion standard, we cannot say that the trial court abused its discretion in granting the injunction.

AFFIRMED.

---

2. The Fire Department has limited our review of this case by its single assertion regarding the rights afforded to a landowner whose property abuts a public road. Normally a party seeking ingress and egress across another's property could plead and prove up the whole spectrum of possible legal theories. In this case, one such possible theory might be equitable estoppel. The exact nature and extent of equitable estoppel has not been clearly defined and the application must depend upon the unique facts of each case. *See Scott v. Cannon*, 959 S.W.2d 712, 720 (Tex.App.—

Austin 1998, writ denied). It is our understanding, however, that the doctrine is limited to ingress and egress purposes only and could not be construed to allow an unlimited use of the road. Because equitable estoppel is a fact orientated doctrine, the trial court as finder of fact, would be charged with the responsibility of weighing the evidence to determine if an easement of estoppel existed. *See, e.g., id; Shipp v. Stoker*, 923 S.W.2d 100, 102 (Tex. App.—Texarkana 1996, writ denied); *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied).