Carrie BETTS, Appellant,

v.

Hermon REED, Jr., Appellee.

No. 06–04–00081–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 27, 2005.

Decided May 27, 2005.

Rehearing Overruled July 6, 2005.

Frank D. Moore, Cooper, for appellant.

James R. Rodgers, The Moore Law Firm, LLP, Paris, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This appeal arises from a dispute between two landowners, Carrie Betts and Hermon Reed, Jr., over a narrow road running across Betts' property and leading to Reed's property. This road is located in Red River County and is sometimes known as Tyson Road.[1] Contending the road had been a public road for at least ninety years, Reed filed a declaratory judgment action against Betts concerning the status of Tyson Road and sought damages for the denial of its use. The trial court found Tyson Road had been impliedly dedicated to public use, abandoned, and then acquired by Reed through prescription. Betts contends the evidence is legally and factually insufficient to support the finding that Reed established a private easement by prescription and to support the damages awarded. In response, Reed contends the evidence is sufficient to support the trial court's judgment under three separate theories: implied dedication, public prescription, or a private prescription. We affirm the trial court's judgment in part and reverse in part. There is sufficient evidence Tyson Road had been impliedly dedicated to public use, but the evidence is legally insufficient that it had been abandoned.

### Factual Background

Several witnesses testified this narrow gravel road has been used by the public since at least the 1920s. At one time, several families used Tyson Road to access their homes. Permission was never sought from anyone, and there were no restrictions on who could use the road.

In 1964, Reed purchased 105 acres along Tyson Road, which is most of the property now accessible by that road. Initially, Reed paid taxes on only 103 acres because the county estimated that Tyson Road occupied the remainder of the acreage. However, the county's taxing authority started collecting taxes for the entire 105 acres eight to ten years ago. Reed uses his property primarily to graze cattle and to lease for deer hunting. Reed testified he has used Tyson Road continuously since 1964. He never asked permission to use the road. At some time, not shown by the record, a gate was erected across the road at some location, again not shown by the record, but apparently before reaching Reed's property.

Betts acquired her property along Tyson Road in 1990. She testified that she wanted to build a new house on the site of the road and that she had offered Reed an alternative route, which he refused to accept. Betts further testified she was aware before the acquisition of her property that Reed used Tyson Road.

Approximately one year before trial, Reed began to experience problems using the road. Although he had an alternative route through a neighbor's property to access his property, the alternative route was more difficult and much longer. Despite a temporary restraining order against Betts, the gate across the road was locked and debris was left on the road to inhibit its use.

Following a bench trial, the court found Tyson Road had been a public road that was abandoned for twenty years or more. The court further found that Reed had perfected a prescriptive easement. The court awarded damages of $6,950.00 and attorney's fees in the amount of $6,250.00 to Reed. Last, the court permanently en-

---

1. Although the road in question has not been formally named by the county, several of the witnesses testified they refer to the road as Tyson Road. At one time, a man named Tyson owned land along this road. For the sake of convenience, we will refer to the disputed road as Tyson Road.

joined Betts from interfering with Reed's use of the road and barred her from entry onto the road.

### Standard of Review

■ We review de novo the trial court's legal conclusions. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996); *Cherokee Water Co. v. Freeman,* 33 S.W.3d 349, 353 (Tex. App.-Texarkana 2000, no pet.). Although Betts requested findings of fact, the record contains no such findings and no notice of past due findings. "The failure to file a notice of past due findings of fact waives the right to complain about the trial court's failure to file findings of fact and conclusions of law." *Curtis v. Comm'n for Lawyer Discipline,* 20 S.W.3d 227, 232 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *see Ohio Cas. Group v. Risinger,* 960 S.W.2d 708, 712 (Tex.App.-Tyler 1997, writ denied); *see also* TEX.R. CIV. P. 297.

■ In the absence of findings of fact and conclusions of law, we imply that the trial court found all facts necessary to support its judgment as long as they also are supported by the evidence. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). However, those implied findings may be challenged on appeal for legal and factual sufficiency where the appellate record includes the reporter's and clerk's records. *Id.* We note that complaints concerning the sufficiency of the evidence in a nonjury trial may be made for the first time on appeal. TEX. R.APP. P. 33.1(d); TEX.R. CIV. P. 324; *Regan v. Lee,* 879 S.W.2d 133, 135 (Tex.App.-Houston [14th Dist.] 1994, no writ); *see Kissman v. Bendix Home Sys., Inc.,* 587 S.W.2d 675, 677–78 (Tex.1979).

■ When deciding a legal sufficiency point concerning a fact issue, we must consider all the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable infer-ence that could be made from the evidence in that party's favor. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Pilgrim's Pride Corp. v. Smoak,* 134 S.W.3d 880, 888 (Tex.App.-Texarkana 2004, pet. denied). We disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A no-evidence point will be sustained when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

■ When considering a factual sufficiency challenge to a jury's verdict, a court of appeals must consider and weigh all of the evidence, not just the evidence supporting the verdict. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). A court of appeals may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact-finder. Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Mar. Overseas Corp.,* 971 S.W.2d at 407. If we

find the evidence insufficient, we must clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

### Tyson Road Was Impliedly Dedicated As a Public Road

 Legally and factually sufficient evidence supports the trial court's finding that Tyson Road had become a public road through implied dedication. Since the origin of the road is "shrouded in obscurity," the long and continuous use of the road by the public creates a presumption of dedication. No evidence was introduced to rebut this presumption.

 A property owner, under the common law, can either expressly or impliedly make known his or her intention to dedicate.[2] The essential elements of implied dedication are:

> (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) [the landowner] was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.

*Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (quoting *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex.1984)); *see Machala v. Weems*, 56 S.W.3d 748, 760 (Tex.App.-Texarkana 2001, no pet.); *Stein v. Killough*, 53 S.W.3d 36, 43 (Tex.App.-San Antonio 2001,

no pet.). The determination of whether a public right-of-way has been acquired by dedication is a question of fact. *Lindner*, 691 S.W.2d at 591; *Graff*, 947 S.W.2d at 635.

 As a general rule, the manifestation of an intent to dedicate must be something more than an omission, failure to act, or acquiescence on the part of the owner. *Greenway Parks Home Owners Ass'n v. City of Dallas*, 159 Tex. 46, 312 S.W.2d 235, 241 (1958); *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 839 (Tex. App.-San Antonio 1997, no writ). "In order to constitute dedication by estoppel or implication there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use and an acceptance thereby by the public." *Greenway Parks Home Owners Ass'n*, 312 S.W.2d at 241. There must be some evidence in addition to the owner's acquiescence that implies a donative intent. *Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 681 (Tex.App.-Corpus Christi 1998, pet. denied). The additional evidence may include, but is not limited to: (1) permitting public authorities to grade, repair, or otherwise improve the roadway; (2) selling parcels of land from a plat or plan showing the roadway as a means of access to the parcels; (3) construction of facilities for general public use; (4) an express representation by the owner of a road to a land purchaser that the way is reserved for public use; (5) fencing off the roadway from the remainder of the land; or (6) obtaining a reduc-

---

2. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 503 (Tex. App.-Texarkana 2002, pet. denied). We note that the Texas Legislature has abolished the theory of implied dedication in counties with a population of 50,000 or less. *Id.* at 503–04; *see* TEX. TRANSP. CODE ANN. § 281.003 (Vernon 1999). This statute does not affect roads impliedly dedicated to public use before the effective date. *Pinebrook Props., Ltd.*, 77

S.W.3d at 504; *Graff v. Whittle*, 947 S.W.2d 629, 635 (Tex.App.-Texarkana 1997, writ denied). It is clear Tyson Road was impliedly dedicated before the effective date of this statute. *See* Act of June 1, 1981, 67th Leg., R.S., ch. 613, 1981 Tex. Gen. Laws 2412–13, *amended by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1195–96.

tion in the purchase price commensurate with the area of the roadway. *Id.* Direct evidence of a landowner's intent is not required. *Supak v. Zboril,* 56 S.W.3d 785, 790 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *see Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957, 958–59 (1952) (affirmed jury finding of implied dedication where road had been used by public for many years, landowner was aware of public use, county had repaired and graded road, and property along roadway was fenced); *see also Malone v. Whitfield,* 621 S.W.2d 192, 195 (Tex.Civ.App.-Waco 1981, writ ref'd n.r.e.) (affirming finding of implied dedication when public used road for thirty-five years, county maintained road, and road was delineated by fences). Evidence that the public had used the road, the county had maintained the road, and the road had been fenced on both sides was introduced at trial.[3]

 The long and continuous use of the road by the public raises a presumption of donative intent. When the origin of the road cannot be determined, evidence of long and continued use by the public raises a presumption that the landowner intended to dedicate the road. *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 882 (1960); *Reed v. Wright,* 155 S.W.3d 666, 672 (Tex.App.-Texarkana 2005, pet. filed); *Supak,* 56 S.W.3d at 790; *Graff,* 947 S.W.2d at 637; *Fazzino v. Guido,* 836 S.W.2d 271, 274 (Tex.App.-Houston [1st Dist.] 1992, writ denied). For this presumption to apply, the ownership of the land when the road originated must be "shrouded in obscurity" so that no evidence of the intent of the owner is available. *O'Connor,* 339 S.W.2d at 882; *Reed,*

155 S.W.3d at 672; *Supak,* 56 S.W.3d at 790; *Graff,* 947 S.W.2d at 637; *Fazzino,* 836 S.W.2d at 274.

The origin of Tyson Road is "shrouded in obscurity," and no evidence of the intent of the owner who established the road was introduced. There was legally and factually sufficient evidence of long and continuous use by the public. Although Reed did not establish that the road had been used for ninety years, he did present evidence the road had been used since the 1920s. Algie Rose, who was eighty-one years old at the time of trial, testified he remembered using Tyson Road since the late 1920s or early 1930s. Rose testified he never asked permission to use the road. Reed, who was sixty-nine at the time of trial, testified he had used Tyson Road since he was a child. Reed testified he had owned property along Tyson Road since 1964 and had used Tyson Road to access his property since that time. Betts acknowledged she had never given Reed permission to use Tyson Road. Although he had not used Tyson Road recently, Shepard Sanders, who was sixty-six years old at the time of trial, stated he had occasionally traveled up and down Tyson Road since he was fifteen. Sanders testified that several families had lived on the road in the past and that everybody used Tyson Road. Sanders testified he had used Tyson Road to haul hay. Josie Reed, who was eighty years of age at the time of trial, testified she has used Tyson Road since she was in her teens. Josie Reed testified that everyone considered the road a public road and that she had never asked permission to use the road. Reed and Rose also

---

**3.** The evidence at trial showed the road had been used by the public since the 1920s, had been fenced on both sides, and had been maintained by the county. Reed testified the road had been fenced on both sides since he was a child. While the county did maintain Tyson Road years ago, it ceased maintaining the road sometime in the 1950s or 1960s. Shepard Sanders and Josie Reed, Reed's cousin, testified the county had maintained the road "a long time ago." Ben Story, a county commissioner from 1981 until around 1995, testified the county had not maintained Tyson Road during his time as commissioner.

testified that the Cook, Houston, Walker, and Ford families used Tyson Road in the late 1940s to access their property.

When viewed in a light most favorable to the verdict, more than a scintilla of evidence exists that the public used Tyson Road for a long and continuous time. When viewed in a neutral light, the great weight and preponderance of the evidence does not indicate that the trial court's finding was clearly wrong or unjust. Because the origin of the road is shrouded in obscurity, the evidence of long and continued use by the public raises a presumption that the landowner intended to dedicate the road.[4] Betts presented no evidence disputing the presumption of implied dedication. The evidence is legally and factually sufficient to support the trial court's finding that Tyson Road had been impliedly dedicated as a public road.

### Trial Court Erred In Concluding Tyson Road Had Been Abandoned

 The trial court found Tyson Road had been abandoned more than twenty years ago. If Tyson Road is a public road, Betts contends the road remains a public road because it is still being used for the same purpose for which it has been used in the past. We agree. The evidence is legally insufficient that Tyson Road had been abandoned.

 A landowner cannot revoke the dedication or use the property contrary to the original purpose of the dedication once a dedication is accepted. *See Lindner v. Hill,* 673 S.W.2d 611, 616 (Tex.App.-San Antonio 1984), *aff'd,* 691 S.W.2d 590 (Tex. 1985); *Moody v. White,* 593 S.W.2d 372, 378 (Tex.Civ.App.-Corpus Christi 1979, no writ); *Edmiston v. City of Harlingen,* 347 S.W.2d 742, 744–45 (Tex.Civ.App.-San Antonio 1961, writ ref'd n.r.e.). "Once a road is dedicated to public use, that road remains subject to that use unless it is abandoned." *Lindner,* 691 S.W.2d at 592.

There is no evidence Tyson Road had been abandoned. Neither statutory abandonment nor common-law abandonment has been shown. Further, there is no evidence the commissioner's court has formally ordered that Tyson Road is abandoned. *See* Tex. Transp. Code Ann. § 251.051 (Vernon 1999).

There is no evidence of statutory abandonment pursuant to the Transportation Code. Section 251.057 of the Transportation Code provides:

4. As we stated in *Graff* and *Reed,* if the origin of the road is shrouded in obscurity and there is no contrary showing of the owner's intention, long and continuous public use raises a presumption of dedication. *Graff,* 947 S.W.2d at 637; *Reed,* 155 S.W.3d 666. Even if the presumption supplies only the landowner's intent to dedicate the road to public use, we believe sufficient evidence exists to support the remaining elements. The obscurity shrouding the origin of Tyson Road also shrouds the identity and intent of the owner or owners who originally established the roadway. Logically, the obscurity also shrouds any assessment of any previous owner's competency. Since there was no claim or evidence of incompetency of any prior owners, we conclude that element was satisfied. The public's long and continued use of

Tyson Road, without contrary evidence, also provides sufficient evidence that the public accepted Tyson Road and satisfies the public benefit elements. Acceptance of a dedication can be implied from public use of the land. *Viscardi v. Pajestka,* 576 S.W.2d 16, 19 (Tex. 1978); *Stein,* 53 S.W.3d at 41–42; *Gutierrez,* 951 S.W.2d at 842; *see Camilla Twin Harbor Volunteer Fire Dep't v. Plemmons,* 998 S.W.2d 413, 415 (Tex.App.-Beaumont 1999, pet. denied). Because Reed introduced evidence public continuously used the road for over seventy years, legally and factually sufficient evidence exists that the public accepted the implied dedication of Tyson Road. Thus, even if the presumption supplies only the first element involving the intention of the landowner, sufficient evidence exists for the remaining elements of implied dedication.

(a) A county road is abandoned when its use has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years. The abandoned road may be reestablished as a public road only in the manner provided for establishing a new road.

(b) This section does not apply to:

(1) a road to a cemetery; or

(2) an access road that is reasonably necessary to reach adjoining real property.

TEX. TRANSP. CODE ANN. § 251.057 (Vernon 1999). There is no evidence Tyson Road has been enclosed with a fence continuously for at least twenty years.[5]

■■■■ The evidence at trial does not support a finding of common-law abandonment, either. To show common-law abandonment, one must show intent to abandon and acts of relinquishment. *Maples v. Henderson County*, 259 S.W.2d 264, 267 (Tex.Civ.App.-Dallas 1953, writ ref'd n.r.e.). "Common-law abandonment 'occurs when the use for which property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails.'" *Griffith v. Allison*, 128 Tex. 86, 96 S.W.2d 74, 77 (1936); *Rutledge v. Staner*, 9 S.W.3d 469, 471 (Tex.App.-Tyler 1999, pet. denied). There is no evidence that the purpose of Tyson Road has become practically impossible or that the object of the use for which the property was dedicated has wholly failed. "The purpose of a public road, particularly one of local character, is to provide access to property abutting upon it, as well as a thoroughfare between distant points." *Rutledge*, 9 S.W.3d at

471; *Compton v. Thacker*, 474 S.W.2d 570, 574 (Tex.Civ.App.-Dallas 1971, writ ref'd n.r.e.). Although the number of landowners who use Tyson Road has decreased, the road is still being used to access property abutting it. Tyson Road has not lost its purpose as a public road and, thus, common-law abandonment has not occurred.

■■■■ We note that the county ceased maintaining Tyson Road years ago. However, the county's failure to maintain a road does not establish common-law abandonment. *Rutledge*, 9 S.W.3d at 472; *Compton*, 474 S.W.2d at 574. We also note fewer families now use Tyson Road to access abutting property. Mere nonuse is not sufficient to constitute abandonment. *Compton*, 474 S.W.2d at 574.

Even when viewed in a light most favorable to the trial court's ruling, there is no more than a scintilla of evidence Tyson Road had been abandoned. Therefore, the evidence is legally insufficient to support the trial court's finding of abandonment.

### Damages

■■■■ In her third point of error, Betts contends the evidence is insufficient to support the damages awarded to Reed. The judgment awarded damages as follows:

(1) $600.00 for lost deer lease; (2) $1,000.00 for the time expended by Plaintiff; (3) $350.00 for Plaintiff's lost wages; and (4) $5,000.00 for or [sic] loss of use and denial of access to the road, for a total of Six Thousand, Nine Hundred and Fifty Dollars ($6,950.00).

---

5. We note Reed testified there had been a gate on Tyson Road for years, but it had not been locked. Although the gate could be evidence the road had been abandoned, the evidence at trial did not establish that the gate had been on the road for at least twenty years. Rose testified there were no gates on the road when he used the road in the 1920s and 1930s.

The trial court also awarded $6,250.00 in attorney's fees for trial, plus $5,000.00 if the case was appealed to the court of appeals and $3,500.00 if appealed to the Texas Supreme Court.[6] Betts challenges the award of the damages for the loss of the deer lease, for the additional time expended by Reed, for the additional wages paid to Reed's employees, and for the loss of use of Tyson Road.

During the time Reed was experiencing problems using the road, he had an alternative route through a neighbor's property to access his property. The alternative route, however, was more difficult and much longer. On May 6, 2002, the trial court issued a temporary restraining order that required Betts to allow Reed to use Tyson Road. Despite this court order, the gate was locked and debris was left on the road to inhibit its use. After the restraining order had been signed, the gate continued to be locked. Presumably to discourage use of the road, someone placed various items of debris—such as bed springs, a mattress, and a toilet—on the road. Reed testified that, although he would clean up the road, someone would put more trash on it. At least some of the debris was placed after the temporary restraining order was issued. In addition, someone cut approximately nine-tenths of the way through a tree located next to the road. Reed testified the wind could have blown it over. Because the tree posed a serious potential danger to anyone using the road, Reed testified he cut it down.

■■■ Betts challenges all of the damages on the basis that Reed did not have a right to use Tyson Road. As discussed above, Tyson Road is a public road and Reed had a right to use the road. Further, the temporary restraining order provided that Betts was prohibited from denying Reed the right to use Tyson Road. Generally, damages for wrongful deprivation of the enjoyment of an easement are recoverable for the deprivation or hindrance of use of an easement. *See Seelbach v. Clubb*, 7 S.W.3d 749, 759 (Tex. App.-Texarkana 1999, pet. denied); *Hall v. Robbins*, 790 S.W.2d 417, 418 (Tex.App.-Houston [14th Dist.] 1990, no writ); *Handal v. Cobo & Dosal*, 225 S.W. 67, 69 (Tex.Civ.App.-San Antonio 1920, writ ref'd). Similarly, damages for the denial of access to a public road can be awarded. Because Reed was denied access to Tyson Road and had a right to access Tyson Road, the trial court could award damages.

Betts also contends the damages are inappropriate because there is no evidence she was the person who denied access to Tyson Road. Betts testified she owns the property over which the road runs. She further testified she does not know who locked the gate and does not know who has the key. Reed testified that, although he did not observe Betts locking the gate, she or her mother would be at the gate about ninety percent of the time when he passed through. Because Betts owned the property along Tyson Road and monitored the locked gate, the trial court could reasonably conclude Betts was the person who locked the gate.

■■■ The trial court did not err in awarding damages for the deer lease. Betts argues that any cause of action concerning the loss of the deer lease belongs to the person who was prevented from hunting, rather than Reed. Loss of rental value is an appropriate form of damages when a property is normally used for rental purposes. *See City of Longview v. Stewart*, 66 S.W.2d 450, 451 (Tex.Civ.App.-Texarkana 1933, no writ). Reed testified

---

**6.** We note the trial court orally awarded $15,000.00 in punitive damages at the conclusion of the trial. The judgment, however, does not include any award of punitive damages.

he was unable to lease the property because Betts denied access. The trial court did not err in awarding the loss of the rental value of the property. In addition, Betts argues the deer lease was worth only $400.00. We note Jerry Doyle testified he paid Reed $400.00 for the deer lease. However, Reed testified the deer lease was worth approximately $600.00. Even though the actual lease may have been less than the fair market value, the evidence is sufficient to support the trial court's award of $600.00 as the fair market value of the deer lease.

The evidence is also sufficient to support the damage award for the additional time expended by Reed's employees. Betts characterizes the lost wages as damages for the repair of the road. Betts contends that, because some of the repairs were made before Reed was denied access to the road, the award should be prorated from the time of Reed's use to the date the road was closed. However, the award of $350.00 was based on the amount of time Reed's employees wasted by having to use an alternative route, not for the amount of time spent in repairing or cleaning up the road. Reed testified he had to pay his employees approximately fifty hours of extra time because they had to take an alternative route. Reed estimated the additional wages of his employees at $350.00, i.e., fifty hours at $7.00 per hour. The award of lost wages referred to the cost of taking an alternative route.

In addition, the evidence is sufficient to affirm the damages awarded to Reed for his personal time. Reed testified his alternative route through a neighbor's property cost him personally between seventy-five to one hundred hours of additional time. Reed testified he paid his ranch hands between $8.00 and $10.00 per hour. The trial court could have reasonably inferred that Reed's time was worth at least as much as the amount he paid his employees. Therefore, the trial court's award of $1,000.00 for Reed's personal time, which was roughly equivalent to 100 hours of work at $10.00 an hour, was supported by the evidence.

 The trial court erred, however, in awarding $5,000.00 for the "loss of use" of Tyson Road. There is no evidence Reed sustained $5,000.00 in damages in addition to the other specified damages. While Reed did testify he had sustained other damages, such as being forced to clean up the trash on the road and removing the tree which posed a danger, he provided no testimony as to the value of these damages. Further, Reed never testified his total damages amounted to almost $7,000.00.[7] We find the evidence legally insufficient to support the award of $5,000.00. Further, that award would result in a double recovery. A double recovery exists when a plaintiff obtains more than one recovery for the same injury. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184–85 (Tex.1998); *see Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex.1991). "The one satisfaction rule provides that a party which suffers but one injury can recover only one satisfaction for damages arising from that injury." *El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex.1993). The damages relating to Reed's loss of the deer lease, the loss of Reed's personal time, and the additional wages paid to his employees all resulted from the loss of use of Tyson Road. The $5,000.00 damage award compensates Reed more than once for the specified damages discussed above. Because there

---

7. Reed testified to the specific damages addressed above and agreed with his attorney that his total damages amounted to approximately $3,000.00. When asked if "that puts it up to almost about a $3,000.00 out of pocket loss," Reed testified, "That's about right."

is no evidence supporting the $5,000.00 award and because that award would result in a double recovery, the trial court erred in awarding $5,000.00 for the loss of use of Tyson Road.

The evidence is legally and factually sufficient to support the award of $600.00 for the deer lease, the award of $1,000.00 for the personal time expended by Reed, and the award of $350.00 for the additional wages Reed paid his employees. However, the evidence is legally insufficient concerning the award of $5,000.00, and that award would result in a prohibited double recovery.

### Conclusion

There is sufficient evidence to support the trial court's finding that Tyson Road had been impliedly dedicated as a public road. The evidence is legally and factually insufficient to support the finding that Tyson Road had been abandoned. We affirm the trial court's finding that Tyson Road is a public road, but reverse and render judgment that Tyson Road had not been abandoned. We also affirm the permanent injunction prohibiting Betts from interfering with Reed's access, but reverse the permanent injunction prohibiting Betts from using Tyson Road. Because Tyson Road is still a public road, Betts has the right to use the road. We also strike the award of $5,000.00 for "loss of use and denial of access to the road," but affirm the remainder of the damages totaling $1,950.00, as well as the award of attorney's fees.

We affirm the judgment in part and reverse and render in part in accordance with this opinion.