COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-417-CV

 

 

IN THE INTEREST OF 

 

 

S.W., A CHILD

                                                                                                        

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Regina W. appeals
from the trial court=s order
terminating her parental rights in her child S.W.[2]  Regina=s appellate counsel also files an Anders brief seeking to
withdraw as counsel because, in counsel=s professional opinion, there are no non-frivolous issues to
appeal.  We agree and, therefore, grant
counsel=s motion to withdraw and affirm.

                          II. 
Factual and Procedural Background

Regina W. and her husband
Dewayne W. are the biological parents of S.W. and J.W.  The Texas Department of Family and Protective
Services (TDFPS) took S.W. into protective custody after J.W. died as a result
of traumatic head injuries which were later determined to have been inflicted
by Dewayne.[3]  Regina and Dewayne are also the biological
parents of three other children, C., T., and M.; however, their parental rights
as to these children were previously terminated, and each was subsequently
adopted. 

Regina and Dewayne=s storied history with TDFPS began shortly after the birth of their
first child C. in 1990.  Over the course
of the next four years, TDFPS investigated ten different cases against Regina
alleging neglect and physical abuse of both C. and T., as well as two cases
against Dewayne alleging physical abuse of T. 
Following its investigation, TDFPS entered a Areason to believe@ finding in all but one of these cases and eventually took C., T., and
M. into protective custody in 1993. 













Regina then gave birth to
their other two children, S.W. and J.W., on February 8, 2000 and October 7,
2002 respectively.  It was later
determined that S.W., the child at issue in this termination proceeding, was
born with a form of autism known as Pervasive Development Disorder.  Eventually, TDFPS began receiving additional
referrals of abuse and neglect regarding Dewayne, the first of which arose only
one month after J.W. was born.  From 2000
to 2003, TDFPS received two referrals on the family, and TDFPS conducted an
investigation into both matters. 
However, following its investigation, TDFPS ruled out any form of
physical or medical abuse or neglect in the household. However, on May 28, 2004, Regina left both S.W. and J.W. with
Dewayne in the couple=s apartment
while she went out seeking employment. Regina called Dewayne at approximately
10:30 a.m. to check on the children. 
During the course of the conversation, Dewayne informed Regina that J.W.
began Ato fuss@ and hung up
the phone so that he could resolve the problem. 
Regina again called Dewayne at 4:45 p.m. to inform him that she was on
her way home.  When she asked Dewayne how
the children were doing, he told her that J.W. was Alimp like a noodle@ and had Araspy
breathing.@  Dewayne explained that he had gotten upset
with J.W. because J.W. Ahad been
fussy,@ so Dewayne had thrown the child on the floor.  Regina reacted by telling her husband to make
sure J.W. continued breathing and that she would be home in about thirty
minutes.  Upon arriving home and
observing J.W.=s condition,
Regina called for help, and emergency responders rushed J.W. to Cook Children=s Medical Center, where the child later died. 

TDFPS conducted an
investigation into J.W.=s death and
found reason to believe both parents physically abused J.W.  Additionally, TDFPS found reason to believe
Dewayne medically neglected J.W. as well as reason to believe Regina was
neglectful in her supervision of both J.W. and S.W.  These findings prompted TDFPS to take S.W.
into protective custody and seek termination of both Regina and Dewayne=s parental rights.  Following
Dewayne=s criminal conviction, the termination proceedings commenced via bench
trial.  After the presentation of all the
evidence, the trial court entered an order terminating Regina=s parental rights, which she now appeals.

                                         III.  Anders Brief








Regina=s court‑appointed appellate counsel has filed a motion to
withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his
professional opinion, this appeal is frivolous. 
Counsel=s brief and
motion meet the requirements of Anders v. California by presenting a
professional evaluation of the record demonstrating why there are no arguable
grounds for relief.  386 U.S. 738, 87 S.
Ct. 1396 (1967).  This court has
previously held that Anders procedures apply in parental rights
termination cases.  In re K.M., 98
S.W.3d 774, 777 (Tex. App.CFort Worth 2003, no pet.). 

Once an appellant=s court‑appointed counsel files a motion to withdraw on the
ground that the appeal is frivolous and fulfills the requirements of Anders,
we are obligated to undertake an independent examination of the record and
essentially rebrief the case for the appellant to see if there is any arguable
ground, in addition to those raised by appellant=s counsel, that may be raised on her behalf.  See Stafford v. State, 813 S.W.2d 503,
511 (Tex. Crim. App. 1991).  Although we
gave Regina an opportunity to file a pro se brief, she did not do so.

Despite his belief that
Regina has no meritorious grounds for appeal, Regina=s counsel raises four potential appellate issues in accordance with
his duty under Anders.  See Anders,
386 U.S. at 744, 87 S. Ct. 1402.  These
issues include whether the evidence presented at trial was legally and
factually sufficient to support termination, whether the trial court erred in
extending the deadline for dismissal of the case, and whether appellant
received effective assistance of counsel. 
We address each of these issues in turn.

                             IV. 
Termination of Parental Rights








It is well settled that
because of the elevated status of parental rights, due process requires the
quantum of proof in a termination proceeding to be elevated from the
preponderance of the evidence to clear and convincing evidence.  Tex.
Fam. Code Ann. ' 161.001
(Vernon 2002 & Supp. 2006); Santosky v. Kramer, 455 U.S. 745, 769,
102 S. Ct. 1388 (1982); In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).  The Texas Family Code defines clear and
convincing evidence as the measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.  Tex. Fam. Code Ann. ' 101.007 (Vernon 2002). 
Therefore, to terminate the parent-child relationship under section
161.001 of the Texas Family Code, the petitioner must establish one or more of
the acts or omissions enumerated under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Id. ' 161.001.  In such cases,
termination can not be based solely on a finding by the trier of fact that the
termination is in the best interest of the child.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).  Rather, both elements
must be established for the termination to be proper under Texas law.  Id. 

A.  Standards of Review








This higher burden of proof
in termination cases alters the appellate standard for both legal and factual
sufficiency reviews.  J.F.C., 96
S.W.3d at 265 (discussing legal sufficiency review); In re C.H., 89
S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review); In re
J.T.G., 121 S.W.3d 117, 124 (Tex. App.CFort Worth 2003, no pet.).  Both
legal and factual sufficiency reviews in termination cases must take into
consideration whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction about the truth of the matter on which the
State bears the burden of proof.  J.F.C.,
96 S.W.3d at 265‑66; C.H., 89 S.W.3d at 25; J.T.G., 121
S.W.3d at 124.

Accordingly, in reviewing the
evidence for legal sufficiency in parental termination cases, we look at all
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.  J.F.C., 96
S.W.3d at 266.  In conducting our review,
we must assume that the factfinder resolved any disputed facts in favor of its
finding if a reasonable factfinder could have done so.  Id. 
Additionally, we must disregard all evidence that a reasonable trier
of fact could have disbelieved; however, we must consider undisputed evidence
even if it does not support the finding. 
Id.  If, after conducting
our review, we determine that no reasonable trier of fact could have formed a
firm belief or conviction that its finding was true, then we must conclude that
the evidence is legally insufficient.  Id.








In determining factual
sufficiency of the evidence, we must give due consideration to evidence that
the trier of fact could reasonably have found to be clear and convincing and
then determine whether, based on the entire record, a factfinder could
reasonably form a firm conviction or belief that the parent violated one of the
provisions of section 161.001 and that the termination of his or her parental rights
would be in the child=s best
interest.  Tex. Fam. Code Ann. ' 161.001; C.H., 89 S.W.3d at 25.  We must also consider whether disputed
evidence is such that a reasonable trier of fact could not have reconciled that
disputed evidence in favor of its finding. 
J.F.C., 96 S.W.3d at 266. 
If the disputed evidence is of such magnitude that a trier of fact could
not reasonably have formed a firm belief or conviction that its finding was
true, then the evidence is factually insufficient.  Id. 

                        B. 
Legal and Factual Sufficiency Analysis








In the first two potential
points, Regina=s counsel
raises legal and factual insufficiency of the evidence to support termination
of Regina=s parental
rights. The trial court terminated Regina=s parental rights in S.W. based upon its finding that she violated
family code subsections 161.001(1)(D), (E), and (M).[4]  Tex.
Fam. Code Ann. ''
161.001(1)(D), (E), (M).  We assume for
purposes of this appeal that counsel=s challenge extends to all three grounds for termination found by the
trial court.

                                  1.  Endangerment Findings








In order to terminate the
parent-child relationship on endangerment grounds under section 161.001(1)(D),
TDFPS had to prove that Regina (1) knowingly (2) placed or allowed S.W. to
remain (3) in conditions or surroundings that endangered S.W.=s physical or emotional well‑being.  Tex.
Fam. Code Ann. '
161.001(1)(D).  Endangerment, as that
term is used in the statute, means to expose to loss or injury, to
jeopardize.  Boyd, 727 S.W.2d at
533; J.T.G., 121 S.W.3d at 125; see also In re M.C., 917
S.W.2d 268, 269 (Tex. 1996).  Under
section 161.001(1)(E), the relevant inquiry is whether evidence exists that the
endangerment of the child=s physical
well‑being was the direct result of the parent=s conduct, including acts, omissions, or failures to act.  J.T.G., 121 S.W.3d at 125; see Tex. Fam. Code Ann. ' 161.001(1)(E).  Additionally,
termination under section 161.001(1)(E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  J.T.G., 121
S.W.3d at 125; see Tex. Fam. Code
Ann. '
161.001(1)(E).  However, it is not
necessary that the parent=s conduct be
directed at the child or that the child actually suffer injury.  Boyd, 727 S.W.2d at 533; J.T.G.,
121 S.W.3d at 125.  The specific danger
to the child=s well‑being
may be inferred from parental misconduct standing alone.  Boyd, 727 S.W.2d at 533; In re R.W.,
129 S.W.3d 732, 738 (Tex. App.CFort Worth 2004, pet. denied).  








To determine whether
termination is necessary, courts may look to parental conduct both before and
after the child=s
birth.  In re D.M., 58 S.W.3d 801,
812 (Tex. App.CFort Worth
2001, no pet.).  Stability and permanence
are paramount in the upbringing of a child. 
See In re T.D.C., 91 S.W.3d 865, 873 (Tex. App.CFort Worth 2002, pet. denied) (op. on reh=g).  A factfinder may infer from
past conduct endangering the well‑being of the child that similar conduct
will recur if the child is returned to the parent.  See In re D.L.N., 958 S.W.2d 934, 941
(Tex. App.CWaco 1997,
pet. denied), disapproved on other grounds by J.F.C., 96 S.W.3d at 256,
and C.H., 89 S.W.3d at 17. 
Moreover, evidence of criminal conduct, convictions, and imprisonment
prior to the birth of a child will support a finding that a parent engaged in a
course of conduct that endangered the child=s well‑being.  J.T.G.,
121 S.W.3d at 133.  While imprisonment
alone does not constitute a continuing course of conduct that endangers the
physical or emotional well‑being of a child, it is a fact properly
considered on the issue of endangerment. 
Boyd, 727 S.W.2d at 533-34; R.W., 129 S.W.3d at 743‑44.  Because the evidence concerning these two
statutory grounds for termination are interrelated, we consolidate our
examination of them.  J.T.G., 121
S.W.3d at 126.








The record reflects that
Regina was aware of her husband=s violent and abusive tendencies and that she was, in fact, afraid of
him long before J.W.=s
death.  On one occasion, Dewayne slapped
Regina, giving her a bloody nose after she refused to take out their cat=s litter box.  Through her
written and oral statements to investigators following J.W.=s death, Regina acknowledged that Dewayne had been hitting the
children with a willow stick as a means of punishment.  Additionally, former TDFPS caseworker
Courtney Shallenberger testified that Dewayne admitted to her that in November
of 2003, while wearing a metal brace on his hand, he hit S.W., leaving a bruise
on the child=s
thigh.  Julie Nash Evans, a former
investigator with TDFPS, also testified that, following J.W.=s death, she conducted an interview with Regina in which Regina
discussed with her prior instances in which Dewayne left marks or bruises on
the children.  A long bone scan done on
J.W. upon arriving at the hospital the night the child died revealed several
healing fractures, which were indicative of past physical abuse.  The record also reveals that Dewayne had a
prior criminal conviction for armed robbery for which he served a twenty-six
month sentence.   








Susan Spangler, another
former investigator with TDFPS, testified that during the course of her
investigation of a referral regarding C. in December of 1990, both parents
admitted to her that on several occasions they had taped a pacifier to the
infant=s mouth or put an ounce of whiskey in the child=s bottle to prevent C. from crying. 
Spangler also testified that in January of 1991, another referral
involving Regina arose after C. was admitted to the hospital with one black eye
and bruising on both sides of the face. 
During questioning, Regina stated to Spangler that the child would not
stop crying and that this triggered a flashback to her own sexual abuse
suffered at the hands of her father when she was a child.  Regina told Spangler that she saw images of
her father during the flashback and that she reacted by slapping C. in the face
for approximately two minutes.  Regina
later admitted these facts on cross-examination.  

The record also indicates
that Regina attempted on multiple occasions in the past to admit her children
to area hospitals when the children were not in need of medical treatment.  This prompted two doctors to inform TDFPS of
their belief that Regina suffered from Munchausen by Proxy.  Norma Bartholomew, a counselor providing
therapeutic services to Regina, also testified that Regina has displayed traits
typically associated with narcissism during the course of their therapy
sessions.  Additionally, the evidence
shows that Regina continues to take medication as a means of treating her
depression and anxiety. 








After carefully reviewing the
entire record, looking at the evidence in the light most favorable to the trial
court=s findings and giving due consideration to the evidence that the trial
court, as factfinder, could reasonably have found to be clear and convincing,
we hold that the court reasonably could have formed a firm belief or conviction
that Regina knowingly placed S.W. in conditions and engaged in conduct that
endangered the child=s physical
or emotional well‑being.  See
Tex. Fam. Code Ann. ' 161.001(1)(D), (E); J.F.C., 96 S.W.3d at 256-66; C.H.,
89 S.W.3d at 25; J.T.G., 121 S.W.3d at 124.  Accordingly, we hold that the evidence is
legally and factually sufficient to support the trial court=s findings on endangerment. 

                                    2.  Best Interest Finding








Counsel=s sufficiency challenge also encompasses the trial court=s finding that terminating Regina=s parental rights was in S.W.=s best interest.  There is a
strong presumption that the best interest of a child is served by keeping the
child with the biological parents.  Tex. Fam. Code Ann. '' 153.131(b), 153.191, 153.252 (Vernon 2002); In re W.E.C., 110
S.W.3d 231, 240 (Tex. App.CFort Worth 2003, no pet.). 
However, this presumption may be rebutted by clear and convincing
evidence indicating the biological parents= present unfitness.  D.M.,
58 S.W.3d at 814.  In determining
the best interests of a child, a factfinder may consider a number of
factors.  Holley v. Adams, 544
S.W.2d 367, 372 (Tex. 1976).  These
factors include:  (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and (9) any excuse for the acts or omissions
of the parent.  Id. at 371‑72.  Some of these factors may be inapplicable in
some cases while other factors not listed here may also be considered when
appropriate.  C.H., 89 S.W.3d at
27.








With regard to the first
factor, although S.W. did not testify at trial, testimony indicated that, early
on, S.W. looked forward to Regina=s visits, and the child became upset when visitation ended.  However, it was also revealed that over time,
S.W. developed a stronger bond to the foster mother and that he began
gravitating toward her rather than Regina in later visits.  Regarding the second factorCthe child=s present
and future physical and emotional needsBTroyce Smedema, S.W.=s therapist since 2004, confirmed that S.W. suffers from autism and
displays symptoms typically associated with ADHD.  The record indicates that, despite being five
years of age, developmentally S.W. functioned at the time of trial at a level
between the ages of 18 and 24 months. Additionally, the record shows that S.W.
requires psychotropic medication and a very structured home environment, as
transitions have proven to be extremely difficult for the child.  Regarding the third factorBthe present and future physical and emotional dangers to the childBSmedema opined that should S.W. be forced to reside in an environment
that lacks sufficient structure and stability, such as a homeless shelter, the
child=s mental health would almost certainly deteriorate.  The evidence shows that since 2000, Regina
has moved in and out of local homeless shelters and has been unable to maintain
a stable residence for S.W. for any significant period of time.  

Regarding Regina=s parenting abilitiesBthe fourth Holley factorBthe record demonstrates that Regina failed to demonstrate adequate
parental abilities.  Regina only
completed one of a number of parenting classes recommended by TDFPS in this
case.  She admitted to TDFPS
investigators that she and her husband had taped a pacifier to a prior child=s mouth and put whiskey in that child=s bottle to prevent the child from crying.  As to the fifth factor, although TDFPS
informed Regina of various parenting classes that could assist her, Regina
failed to complete three out of four of these classes.  Regarding TDFPS=s plans for the childBthe sixth factorBTDFPS sought
to be named managing conservator of the child and plans to seek a structured
adoptive home for S.W.  The record
indicates that Regina informed a TDFPS caseworker that should S.W. be returned
to her, she plans on placing S.W. in a 24-hour child care facility while she
continues to work as a night crew clerk. 
However, Regina testified that she intended to either move to the day
shift or seek employment in home health care so that she may be available to
provide for S.W.=s needs. 








As to the stability of the
home or proposed placementBthe seventh Holley factorBTDFPS indicated, through its representatives, that the agency is
looking to place S.W. primarily with a young couple to ensure that S.W. remains
in a stable environment and continues to receive adequate care for years to
come.  Regina admitted on cross-examination
that she has lived in eleven different locations since 2000 alone.  Moreover, with regard to the eighth factor,
the record, as outlined above, provides evidence of numerous acts or omissions
by Regina that support the trial court=s finding that termination of her parental rights is in S.W.=s best interest. 

Finally, concerning the ninth
factorBany excuse for the parent=s acts or omissionsBRegina attempted to justify her abusive conduct by pointing at the
sexual abuse she suffered as a child at the hands of her father.  Although Regina provided no excuse for her failure
to protect her child from her abusive husband, she did explain her reason for
staying with Dewayne by stating that she chose to stay because she feared he
would react violently should she attempt to leave the relationship.  








Looking at all the evidence
in the light most favorable to the best interest finding, we hold that a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.  J.F.C., 96
S.W.3d at 266; J.T.G., 121 S.W.3d at 124-25.  Additionally, giving due consideration to
evidence that the factfinder could have found to be clear and convincing, and
based on our review of the entire record, we hold that a reasonable trier of
fact could have formed a firm belief or conviction that the termination of
Regina=s parental rights would be in S.W.=s best interest.  See W.E.C.,
110 S.W.3d at 247.  Therefore, we hold
that the evidence is legally and factually sufficient to support the trial
court=s best interest finding.

                             V. 
Extension of Dismissal Deadline








In the third possible point
for appeal, Regina=s counsel
contends that the trial court improperly extended the dismissal deadline in
violation of the family code.  See Tex. Fam. Code Ann. ' 263.401(a) (Vernon 2002 & Supp. 2006).  Section 263.401 of the Texas Family Code
provides that, unless the trial court has rendered a final order on the first
Monday after the first anniversary of the date the court appointed TDFPS as
temporary managing conservator in a suit affecting the parent‑child
relationship, the court Ashall
dismiss@ a suit filed by TDFPS that seeks to terminate the parent‑child
relationship.  Id.  The statute also provides that the trial
court may extend this deadline for up to 180 days if, by the Monday after the first
anniversary date, the court finds that continuing TDFPS=s conservatorship of the child is necessary and in the child=s best interest.  Id. ' 263.401(b).  Additionally, upon
making such a finding, the statute requires the court to render an order that
complies with section 263.401(b).  Id.  

To render an order that
complies with section 263.401(b), the trial court is required to schedule a new
date for dismissal of the suit, make further temporary orders for the safety
and welfare of the child as necessary to avoid further delay in resolving the
suit, and set a final hearing on a date that allows the court to render a final
order before the required date for dismissal of the suit.  Id. 
If the trial court grants an extension, but does not render a final
order within the 180-day period, it must dismiss the suit.  Id. ' 263.401(c).  A party may,
however, waive the right to object to the trial court=s failure to comply with these statutory deadlines.  See id. ' 263.402(b) (Vernon 2002).  A
party who fails to make either a timely motion to dismiss the suit or request
that the court render a final order before the deadline for dismissal waives
the right to object to the court=s failure to dismiss the suit.  Id.








In this case, the trial court
entered an order naming TDFPS temporary conservator of S.W. on June 10,
2004.  TDFPS then filed a motion to
extend the dismissal date, which the trial court granted on April 18, 2005
without any objection by Regina.  In its
order, the court extended the dismissal deadline to December 3, 2005 and set
the case for trial on October 4, 2005. 
Following trial, the court entered its order terminating the
parent-child relationship between Regina and S.W. on October 6, 2005. 

After reviewing the record,
we conclude that the trial court acted within the time limits set out in the
Texas Family Code.  See id. ' 263.401(a), (b).  Following the
trial court=s
appointment of TDFPS as S.W.=s temporary managing conservator on June 10, 2004, the court had, by
statute, until June 13, 2005 to either enter a final order or grant an
extension of the dismissal deadline.  See
id. ' 263.401(a).  The trial
court granted TDFPS=s request
for an extension of the dismissal deadline on April 18, 2005 without objection,
thereby satisfying the statutory requirement. 
The court=s order also
went on to set December 3, 2005 as the final dismissal date, well within the
180-day extension period provided for by statute.  See id. ' 263.401(b).  We therefore hold
that the trial court properly extended the dismissal deadline.

                           VI. 
Ineffective Assistance of Counsel








In the fourth possible point,
Regina=s counsel asserts that her trial counsel rendered ineffective
assistance by failing to preserve sufficiency claims for appeal, failing to
object to TDFPS=s request to
extend the dismissal deadline, and failing to seek dismissal of the case prior
to the passage of the original one-year deadline.  The Texas Supreme Court has held that Athe statutory right to counsel in parental‑rights termination
cases embodies the right to effective counsel.@  In re M.S., 115 S.W.3d
534, 544 (Tex. 2003); see Tex.
Fam. Code Ann. '
107.013(a)(1) (Vernon Supp. 2006).  In
analyzing the effectiveness of counsel in termination cases, we follow the two‑pronged
test that was set forth by the United States Supreme Court in Strickland v.
Washington.  466 U.S. 668,
687, 104 S. Ct. 2052, 2062 (1984).  To
show ineffectiveness, the appellant must show that counsel=s assistance fell below an objective standard of reasonableness and
that counsel=s deficient
assistance, if any, prejudiced the defendant. 
See M.S., 115 S.W.3d at 545. 
In evaluating ineffective assistance claims, courts must give great
deference to counsel=s
performance and indulge a strong presumption that counsel=s conduct falls within the wide range of reasonable professional
assistance, including the possibility that counsel=s conduct was strategic.  Id.  It is only when the conduct was so outrageous
that no competent attorney would have engaged in it that the challenged conduct
will constitute ineffective assistance.  Id.








As to the potential argument
that trial counsel rendered ineffective assistance by failing to preserve
sufficiency complaints for appeal, there is no such requirement.  Because this was a bench trial, there was no
need to preserve legal and factual sufficiency issues for appeal.  Tex.
R. App. P. 33.1(d);  Tex. R. Civ. P. 324(a)-(b); Kissman
v. Bendix Home Sys., Inc., 587 S.W.2d 675, 677‑78 (Tex. 1979); Betts
v. Reed, 165 S.W.3d 862, 867 (Tex. App.CTexarkana 2005, no pet.). 
Additionally, the remaining grounds underlying counsel=s ineffective assistance argument are rendered meritless because
appellant is unable to show prejudice as a result of our finding the evidence
legally and factually sufficient to support the trial court=s termination finding.  In re
J.W., 113 S.W.3d 605, 616 (Tex. App.CDallas 2003, pet. denied). 

                                         VII.  Conclusion

After independently reviewing
the record, we agree with appellate counsel=s determination that any appeal from this case would be
frivolous.  Accordingly, we grant
appellate counsel=s motion to
withdraw and affirm the trial court=s judgment. 

PER CURIAM

 

PANEL F:    GARDNER, HOLMAN, and WALKER, JJ.

 

DELIVERED:  October 19, 2006











[1]See Tex. R. App. P. 47.4.





[2]The trial court order also
terminated the parental rights of S.W.=s father Dewayne W., however, he has not appealed the
termination order. 





[3]Dewayne was convicted of injury to
a child with serious bodily injury as a result of J.W.=s death and was sentenced to sixty
years= imprisonment. 





[4]Under these provisions, a court may
order termination of the parent-child relationship if the court finds by clear
and convincing evidence that the termination is in the child=s best interest and the parent has:

(D)     knowingly placed or knowingly allowed the
child to remain in conditions or surroundings which endanger the physical or
emotional well-being of the child;

(E)     engaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child; 

. . . . 

(M)    had
his or her parent-child relationship terminated with respect to another child
based on a finding that the parent=s conduct was in violation of Paragraph (D) or (E) or
substantially equivalent provisions of the law of another state.