IN RE D.D.S.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-313-CV

IN THE INTEREST OF 

D.D.S. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Roy Dean Antelope appeals from the trial court’s order terminating his parental rights in D.D.S.
(footnote: 2)  We affirm.

Anders Brief

Appellant’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders v. California
 by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.  386 U.S. 738, 87 S. Ct. 1396 (1967).  This court has previously held that 
Anders
 procedures apply in parental rights termination cases.  
In re K.M.
, 98 S.W.3d 774, 776-77 (Tex. App.—Fort Worth 2003, no pet.).

Once an appellant’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we are obligated to undertake an independent examination of the record and essentially to rebrief the case for the appellant to see if there is any arguable ground that may be raised on his behalf.  
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).  Although we gave appellant an opportunity to file a pro se brief, he did not do so.

Background and Potential Arguable Grounds for Relief

D.D.S. was taken into custody by the Texas Department of Family and Protective Services (TDFPS) when his mother left him with a neighbor and never returned.  He had been removed from her care once before in Tennessee and placed with his maternal grandmother in Texas.  TDFPS filed a petition to terminate the parental rights of D.D.S.’s mother and appellant as D.D.S.’s alleged father.  Appellant lives in Oklahoma.  After a bench trial, the trial court terminated appellant’s parental rights on the following grounds:

• ”after having waived service of process or being served with citation . . .  [appellant] did not respond by filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit”;

• appellant “has not registered with the paternity registry”;

• appellant “knowingly placed or knowingly allowed [D.D.S.] to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of [D.D.S.]”;

• appellant “engaged in conduct or knowingly placed [D.D.S.] with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of [D.D.S.]”;

• appellant “constructively abandoned [D.D.S.] who [has] been in the permanent or temporary managing conservatorship of [TDFPS] . . . for not less than six months and: (1) [TDFPS] . . . has made reasonable efforts to return [D.D.S.] to the mother;[
(footnote: 3)] (2) the mother has not regularly visited or maintained significant contact with [D.D.S.]; and (3) the mother has demonstrated an inability to provide [D.D.S.] with a safe environment”; and

•termination was in D.D.S.’s best interest.

See
 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (N), (2) (Vernon Supp. 2005), § 161.002(b) (Vernon 2002).

Appellant’s counsel presents a discussion of three potential sources of error: (1) whether trial counsel rendered ineffective assistance by (a) failing to file  an admission of paternity or paternity claim under section 161.002(b)(1) of the family code and (b) by failing to preserve legal and factual sufficiency claims and (2) whether the trial court reversibly erred by admitting hearsay testimony.

Effectiveness of Trial Counsel

In his first potential arguable ground for relief, appellate counsel contends that trial counsel could be considered to have rendered ineffective assistance by failing to have appellant file an admission of paternity or counterclaim of paternity.  
See In re M.S.,
 115 S.W.3d 534, 544-45 (Tex. 2003) (holding that statutory right to counsel in parental rights termination cases embodies right to effective counsel, which is governed by 
Strickland v. Washington
(footnote: 4) standard)
.

TDFPS sought to terminate appellant’s parental rights as an alleged biological father.  Section 161.002(b)(1) of the family code provides that “[t]he rights of an alleged father may be terminated if . . . after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160.”  
Tex. Fam. Code Ann.
 § 161.002(b)(1) (footnote omitted).  Subsection 161.002(b)(1) allows TDFPS to summarily terminate the rights of an alleged biological father who does not assert his paternity.  
Phillips v. Tex. Dep’t of Protective & Regulatory Servs.
, 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.).  However, if the alleged father files an admission of paternity or otherwise claims paternity, then the alleged father is able to stave off summary termination of his rights, and TDFPS must instead meet the high burden of proof
(footnote: 5) found in section 161.001.  
Tex. Fam. Code Ann.
 § 161.002(a); 
Phillips
, 25 S.W.3d at 357.

This court has held that there are no formalities that must be observed for an admission of paternity to be effective; for example, an admission of paternity in letters written to the trial court will suffice.  
In re K.W.
, 138 S.W.3d 420, 430 (Tex. App.—Fort Worth 2004, pet. denied).  Here, appellant waived service and signed a request for counsel that states, “I, Roy Antelope [handwritten in blank space of form], am a parent of the child named above.”  In addition, at trial, appellant admitted that he was D.D.S.’s father and that he had no reason to doubt that fact.  In his notice of appeal and affidavit of indigency filed after trial, appellant is referred to as “Respondent Father.”  
See Estes v. Dallas County Child Welfare Unit of Tex. Dep’t of Human Servs.
, 773 S.W.2d 800, 802 (Tex. App.—Dallas 1989, writ denied) (holding that appellant’s statement in pro se answer that he was an indigent parent was sufficient to constitute an admission of paternity under former version of section 161.002(b)).  Accordingly, we conclude that appellant admitted his paternity of D.D.S. for purposes of section 161.002(b)(1).  Therefore, trial counsel could not have been ineffective for failure to file an admission of paternity or counterclaim for paternity.  
See
 
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064 (holding that appellant claiming ineffective assistance must show that counsel’s performance was deficient and that the deficient performance prejudiced the defense).

As to the potential arguable ground that trial counsel rendered ineffective assistance by failing to preserve sufficiency complaints for appeal, there was no such requirement.  Because this was a bench trial, there was no need to preserve legal and factual sufficiency issues for appeal.  
Tex. R. App. P.
 33.1(d); 
Tex. R. Civ. P.
 324(a)-(b)
; 
Kissman v. Bendix Home Sys., Inc.
,
 
587 S.W.2d 675, 677-78 (Tex. 1979); 
Betts v. Reed
, 165 S.W.3d 862, 867 (Tex. App.—Texarkana 2005, no pet.).  Accordingly, we overrule appellant’s potential arguable grounds for relief based on ineffective assistance of counsel.
(footnote: 6)
Admission of Hearsay Evidence

In his second potential arguable ground for relief, appellant’s counsel challenges the trial court’s admission of hearsay evidence.  At trial, the trial court allowed a caseworker to testify about statements made by D.D.S.’s mother, who was not present at trial, that appellant drank and smoked marijuana on a daily basis, that he was a pimp and used drugs, and that he would manipulate his mother if she had custody of D.D.S.  However, appellant admitted on both direct and cross-examination that he had convictions for DUI and solicitation of prostitution in Oklahoma and that he had acted as a pimp in the past.  Appellant also admitted that he had used marijuana as his “drug of choice.”  Although appellant did not admit to having control over his mother, D.D.S.’s maternal grandmother testified, without objection, that she talked to appellant on the phone when D.D.S.’s mother had called him asking for money for D.D.S.  Appellant threatened her, saying that if she “didn’t stay out of it, he would kill both” her and D.D.S.’s mother.  D.D.S.’s maternal grandmother was so fearful of appellant that she obtained a protective order against him.  Moreover, evidence was admitted without objection that placement of D.D.S. with appellant’s mother was not an option because she had failed to cooperate with Oklahoma child protection authorities in completing a home study.

Although appellant twice objected on hearsay grounds to the evidence about his drug and alcohol usage, his working as a pimp, and his manipulation of his mother,
(footnote: 7) other times the same or similar evidence was admitted without objection, much of it through appellant’s own testimony.  Accordingly, we hold that even if the trial court’s admission of the evidence constituted an abuse of discretion, appellant was not harmed.  
See
 
Tex. R. App. P.
 44.2(b); 
Volkswagen of Am., Inc. v. Ramirez
, 159 S.W.3d 897, 907 (Tex. 2004); 
Richardson,
 677 S.W.2d at 501.  We overrule appellant’s second potential arguable ground for relief.

Independent Review of Record

In addition to the matters we have already addressed, our independent review of the record shows that there is no error that arguably might support an appeal or require reversal.  There are no jurisdictional errors.  TDFPS had standing to petition for termination, and the trial court had jurisdiction over the suit.  
See
 
Tex. Fam. Code Ann.
 § 102.003(5) (Vernon Supp. 2005), §§ 152.201, 262.001(a), 262.002 (Vernon 2002).  Further, the order of termination was rendered within the statutory deadline set forth in family code section 263.401.  
See id.
 § 263.401(a), (b) (Vernon Supp. 2005).  The trial court and TDFPS also complied with all other statutory deadlines.  
See id
. § 263.101 (Vernon 2002), §§ 263.201, 263.3025 (Vernon Supp. 2005), § 263.304 (Vernon 2002).

Additionally, after having reviewed the evidence under the appropriate standards of review, we hold that it was both legally and factually sufficient to support the trial court’s order.  
See City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005) (providing legal sufficiency standard of review); 
In re J.F.C.
, 96 S.W.3d 256, 265-66 (Tex. 2002) (same); 
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002) (providing factual sufficiency standard of review).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the State must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Tex. Fam. Code Ann. 
§ 161.001(2); 
Richardson
, 677 S.W.2d at 499; 
Swate
, 72 S.W.3d at 766.  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Termination based on section 161.001(E) is proper if clear and convincing evidence shows that the parent engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children’s physical or emotional well-being.  
Tex. Fam. Code Ann.
 § 161.001(E).  Subsection E requires us to look at the parent’s conduct alone, including actions, omissions, or the parent's failure to act.  
In re D.M.
, 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.).

“Endanger” means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury.  
Boyd
, 727 S.W.2d at 533.  For instance, physical abuse is not required when a parent’s omission, such as his or her neglect, has endangered the children.  
Phillips
, 25 S.W.3d at 354.  Further, when a parent’s mental state allows him or her to engage in conduct that endangers the physical or emotional well-being of the child, that conduct has bearing on the advisability of terminating the parent's rights.  
In re J.I.T.P.
, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); 
In re C.D.
, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ).

Here, appellant admitted that he had habitually used alcohol and marijuana during his adult life and during D.D.S.’s life, only quitting when he was sent to a halfway house about sixty days before the termination hearing; that he had worked frequently as a pimp since about 1982—although he testified that he had stopped “a while ago” as of the date of trial; that he worked as D.D.S.’s mother’s pimp while D.D.S. was in her care; that he continued to allow D.D.S.’s mother to care for D.D.S. even though he knew that she had abandoned D.D.S. twice, the first time leaving him to live with appellant and his mother when D.D.S. was an infant and the second time when D.D.S. was about a year old and was removed from his mother’s care while she was working as a prostitute;
(footnote: 8) that he had been incarcerated for over three years and on parole for almost ten years for solicitation of prostitution of a minor; that while he was on parole and participating in TDFPS’s service plan, he committed DUI when following a woman onto an air force base to “party”; and that he’d been jailed twice for possession of a controlled substance and once for being drunk in a public place and assaulting a peace officer.
(footnote: 9)  Appellant admitted that he did not visit D.D.S.’s mother while she was pregnant with D.D.S., and he did not come to see D.D.S. when he was born.  Appellant did not give D.D.S.’s mother any money for support at that time because he did not have a job.  Appellant testified that when he, D.D.S., and D.D.S.’s mother lived in Nashville for a short time while D.D.S. was still a baby, he supported D.D.S. by acting as the mother’s pimp.  He estimated that they made $300 to $500 a day.  He admitted that it was good for D.D.S. to be away from a lifestyle in which his parents engaged in prostitution and promotion of prostitution.  Appellant also admitted that he came to Texas to visit D.D.S. “on the sly” when the mother was attempting to regain custody after the first removal in Tennessee.  Appellant explained that they hid his visits from TDFPS because one of the requirements for the mother to have D.D.S. returned was not to have contact with appellant.

Appellant testified that he has eight other children by three other mothers.  He occasionally gives money to the mother of two of the children when she asks him.  One of the children, Giovanni, lives with appellant and his mother, and appellant supports him.
(footnote: 10)  Appellant said that he did not provide support to any of the other children.  Appellant testified that he was working at a steady job; if his rights were not terminated, he would support D.D.S. and Giovanni, initially living at his mother’s house but eventually moving into their own home.

The evidence also showed that after D.D.S. was removed from his mother the second time, prompting this termination proceeding, he had problems with nightmares and aggression and required therapy.  Although his aggression had improved while he was in foster care, his therapist recommended continuing therapy. 

This evidence is sufficient to produce in the mind of the fact finder a firm belief or conviction that appellant had engaged in conduct or knowingly placed D.D.S. with persons who engaged in conduct that endangered his physical or emotional well-being.  
See
 
Tex. Fam. Code Ann. 
§§ 101.007, 161.001(E). Accordingly, the evidence is legally and factually sufficient to support termination of appellant’s parental rights under section 161.001(E).  
See id.
 § 161.001(E); 
J.F.C.
, 96 S.W.3d at 265-66; 
C.H.
, 89 S.W.3d at 25.

The evidence is also legally and factually sufficient to support the trial court’s finding that termination was in D.D.S.’s best interest.  
See Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976)
; 
see also C.H.,
 89 S.W.3d at 27.  Appellant admitted to still being at the halfway house and not able to parent D.D.S. at the time of trial.  Although he said he was “dried out,” attending alcohol classes, had just signed up for parenting classes, and was working, he, D.D.S., and Giovanni would have to live with appellant’s mother until he could find and afford another place for them to live.
(footnote: 11)  However, a TDFPS caseworker testified that Oklahoma child protection authorities denied a home study of appellant’s mother because she would not cooperate.  Although appellant’s mother testified that she attempted to work with the caseworker but that the caseworker never got back to her, the caseworker’s report shows that appellant’s mother was uncooperative.

Appellant did not know much about D.D.S., including his birthday.  The evidence shows that appellant has not lived a stable lifestyle.  Although he had a job at the time of trial, he could make no assurances of future stability other than to explain that he was trying to make a change in his life.  Although appellant visited D.D.S. in Texas approximately once every two weeks from June to December 2004,
(footnote: 12) he made no other attempts to visit until March 2005.  He never returned to visit after March 2005.

The CASA advocate’s report, which the trial court noted at trial that it had reviewed, praises D.D.S.’s progress in foster care because of the secure, stable, and disciplined environment provided by the foster parents.  A TDFPS caseworker testified that the foster parents loved D.D.S. and wanted to adopt him.  He appeared to be bonded with them and had been living with them for about six months.

At the end of trial, the judge stated that “the Court is very concerned for this child in that this is not the first time this child has been in CPS custody in two states and on at least two occasions, and that concerns me greatly for this child and the lack of stability that this child has had in his life.”  We hold that the evidence is both legally and factually sufficient to prove that termination was in D.D.S.’s best interest.

Based on the foregoing, we conclude that there are no arguable grounds that could be raised on appellant’s behalf and that any appeal of this case would be frivolous.

Conclusion

Having disposed of appellate counsel’s potential arguable grounds for relief and having conducted our own independent review of the record, we grant appellate counsel’s motion to withdraw and affirm the trial court’s order of termination.

PER CURIAM

PANEL F: LIVINGSTON, J.; CAYCE, C.J.; and MCCOY, J.

DELIVERED: August 10, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The trial court also terminated the parental rights of D.D.S.’s mother, but she has not appealed.  According to the mother’s counsel and witnesses at trial, they had not heard from her after her release from the Dallas County jail.

3:
The petition seeking termination correctly uses “father” instead of “mother” in this allegation.  The use of “mother” in this section of the order appears to be a typographical error; however, neither appellate counsel nor the State addresses this issue.  Regardless, it makes no difference to the outcome of this case because the evidence is sufficient to support termination under section 161.001(1)(E) of the family code, as discussed later in this opinion.

4:
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)
.

5:
In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish by 
clear and convincing 
evidence that the parent committed one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002), § 161.001; 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).

6:
Although appellate counsel did not raise this issue, we note that early in the case, the trial court appointed him as “citation by publication attorney ad litem” to represent the mother’s interest.  In that capacity as the mother’s “attorney of record,” he appeared for the mother at a status hearing and permanency hearing before the trial court appointed new counsel, which was after the mother was found and waived service.  However, our review of the record does not reveal any conflict of interest as a result of appellate counsel representing mother briefly before trial and appellant on appeal.  Appellate counsel was appointed as an ad litem so that D.D.S.’s mother could be served by publication.  
Tex. R. Civ. P.
 244.  It is unclear whether he had any contact with D.D.S.’s mother at all; however, any contact would have necessarily been limited because after the mother was located at the Dallas County jail, she signed a waiver of service and request for counsel, and the trial court appointed her new counsel.  Moreover, after her release from jail, D.D.S.’s mother disappeared and did not participate at trial or on appeal.  Accordingly, we conclude that counsel’s brief representation of D.D.S.’s mother before trial and his representation of appellant on appeal did not create a conflict of interest.  
See In re B.L.D.
, 113 S.W.3d 340, 342-43 (Tex. 2003) (“[I]n deciding whether there is a conflict of interest between parents opposing termination in a single lawsuit, the trial court must determine whether there is a substantial risk that the appointed counsel’s obligations to one parent would materially and adversely affect his or her obligations to the other parent.”), 
cert. denied
, 541 U.S. 945 (2004).

7:
The hearsay regarding appellant’s manipulation of his mother was the only evidence that appellant’s trial counsel consistently objected to.  But that evidence is sufficiently similar to the unobjected-to testimony of D.D.S.’s maternal grandmother—that appellant was controlling of D.D.S.’s mother—to militate against a determination of harm, especially in light of the other unobjected-to evidence about appellant’s drug use and unstable lifestyle.

8:
This removal occurred in Tennessee.  D.D.S. was placed with his maternal grandmother in Texas, and TDFPS worked with the mother to have D.D.S. returned to her.  Appellant claims that he supported the mother at this time by helping her comply with TDFPS’s requirements for D.D.S. to be returned to her.

9:
Appellant explained that he was not convicted of the possession charges because both times he was riding in a car with friends, and the drugs belonged to them.  He also contends that in the public intoxication and assault case, he was merely walking down the street when the officer grabbed him by the hair.

10:
When asked if he could carry insurance for that child and D.D.S., appellant answered evasively, “I’ll do fine for them.” 

11:
Appellant was making $9 an hour, which the State estimated as approximately $18,000 a year.  Appellant testified that he had the opportunity at his current job to be certified in asbestos removal, at which he could make up to $14.50 an hour.

12:
This proceeding was filed in April 2004.