COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-313-CV

 

 

IN THE INTEREST OF 

 

D.D.S.                                                                                               

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Roy Dean Antelope appeals
from the trial court=s order
terminating his parental rights in D.D.S.[2]  We affirm.

Anders Brief








Appellant=s court-appointed appellate counsel has filed a motion to withdraw as
counsel and a brief in support of that motion. 
In the brief, counsel avers that, in his professional opinion, this
appeal is frivolous.  Counsel=s brief and motion meet the requirements of Anders v. California
by presenting a professional evaluation of the record demonstrating why there
are no arguable grounds for relief.  386
U.S. 738, 87 S. Ct. 1396 (1967).  This
court has previously held that Anders procedures apply in parental
rights termination cases.  In re K.M.,
98 S.W.3d 774, 776-77 (Tex. App.CFort Worth 2003, no pet.).

Once an appellant=s court-appointed counsel files a motion to withdraw on the ground
that the appeal is frivolous and fulfills the requirements of Anders, we
are obligated to undertake an independent examination of the record and
essentially to rebrief the case for the appellant to see if there is any
arguable ground that may be raised on his behalf.  See Stafford v. State, 813 S.W.2d 503,
511 (Tex. Crim. App. 1991).  Although we
gave appellant an opportunity to file a pro se brief, he did not do so.

Background and Potential
Arguable Grounds for Relief








D.D.S. was taken into custody
by the Texas Department of Family and Protective Services (TDFPS) when his
mother left him with a neighbor and never returned.  He had been removed from her care once before
in Tennessee and placed with his maternal grandmother in Texas.  TDFPS filed a petition to terminate the
parental rights of D.D.S.=s mother and
appellant as D.D.S.=s alleged
father.  Appellant lives in
Oklahoma.  After a bench trial, the trial
court terminated appellant=s parental rights on the following grounds:

$      @after
having waived service of process or being served with citation
. . .  [appellant] did not
respond by filing an admission of paternity or by filing a counterclaim for
paternity or for voluntary paternity to be adjudicated under chapter 160 of the
Texas Family Code before the final hearing in this suit@;

 

$      appellant Ahas not registered with the
paternity registry@;

 

$      appellant Aknowingly placed or knowingly
allowed [D.D.S.] to remain in conditions or surroundings which endanger[ed] the
physical or emotional well-being of [D.D.S.]@;

 

$      appellant Aengaged in conduct or
knowingly placed [D.D.S.] with persons who engaged in conduct which
endanger[ed] the physical or emotional well-being of [D.D.S.]@;

 

$      appellant Aconstructively abandoned
[D.D.S.] who [has] been in the permanent or temporary managing conservatorship
of [TDFPS] . . . for not less than six months and: (1) [TDFPS] . . . has made
reasonable efforts to return [D.D.S.] to the mother;[[3]]
(2) the mother has not regularly visited or maintained significant contact with
[D.D.S.]; and (3) the mother has demonstrated an inability to provide [D.D.S.]
with a safe environment@; and

 

$termination
was in D.D.S.=s
best interest.

 








See Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (N), (2) (Vernon Supp. 2005), ' 161.002(b) (Vernon 2002).

Appellant=s counsel presents a discussion of three potential sources of error:
(1) whether trial counsel rendered ineffective assistance by (a) failing to
file  an admission of paternity or
paternity claim under section 161.002(b)(1) of the family code and (b) by
failing to preserve legal and factual sufficiency claims and (2) whether the
trial court reversibly erred by admitting hearsay testimony.

Effectiveness
of Trial Counsel

In his first
potential arguable ground for relief, appellate counsel contends that trial
counsel could be considered to have rendered ineffective assistance by failing
to have appellant file an admission of paternity or counterclaim of paternity.  See In re M.S., 115 S.W.3d 534, 544-45
(Tex. 2003) (holding that statutory right to counsel in parental rights
termination cases embodies right to effective counsel, which is governed by Strickland
v. Washington[4]
standard).








TDFPS sought to terminate
appellant=s parental
rights as an alleged biological father. 
Section 161.002(b)(1) of the family code provides that A[t]he rights of an alleged father may be terminated if . . . after
being served with citation, he does not respond by timely filing an admission
of paternity or a counterclaim for paternity under Chapter 160.@  Tex. Fam. Code Ann. ' 161.002(b)(1) (footnote omitted). 
Subsection 161.002(b)(1) allows TDFPS to summarily terminate the rights
of an alleged biological father who does not assert his paternity.  Phillips v. Tex. Dep=t of Protective & Regulatory Servs., 25 S.W.3d 348, 357 (Tex. App.CAustin 2000, no pet.).  However,
if the alleged father files an admission of paternity or otherwise claims
paternity, then the alleged father is able to stave off summary termination of
his rights, and TDFPS must instead meet the high burden of proof[5]
found in section 161.001.  Tex. Fam. Code Ann. ' 161.002(a); Phillips, 25 S.W.3d at 357.








This court has held that
there are no formalities that must be observed for an admission of paternity to
be effective; for example, an admission of paternity in letters written to the
trial court will suffice.  In re K.W.,
138 S.W.3d 420, 430 (Tex. App.CFort Worth 2004, pet. denied). 
Here, appellant waived service and signed a request for counsel that
states, AI, Roy Antelope [handwritten in blank space of form], am a parent of
the child named above.@  In addition, at trial, appellant admitted
that he was D.D.S.=s father and
that he had no reason to doubt that fact. 
In his notice of appeal and affidavit of indigency filed after trial,
appellant is referred to as ARespondent Father.@  See Estes v. Dallas County
Child Welfare Unit of Tex. Dep=t of Human Servs., 773 S.W.2d 800, 802
(Tex. App.CDallas 1989,
writ denied) (holding that appellant=s statement in pro se answer that he was an indigent parent was
sufficient to constitute an admission of paternity under former version of
section 161.002(b)).  Accordingly, we
conclude that appellant admitted his paternity of D.D.S. for purposes of
section 161.002(b)(1).  Therefore, trial
counsel could not have been ineffective for failure to file an admission of
paternity or counterclaim for paternity. 
See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064
(holding that appellant claiming ineffective assistance must show that counsel=s performance was deficient and that the deficient performance
prejudiced the defense).








As to the potential arguable ground that trial counsel
rendered ineffective assistance by failing to preserve sufficiency complaints
for appeal, there was no such requirement. 
Because this was a bench trial, there was no need to preserve legal and
factual sufficiency issues for appeal.  Tex. R. App. P. 33.1(d); Tex. R. Civ. P.
324(a)-(b); Kissman v. Bendix Home Sys., Inc., 587 S.W.2d 675,
677-78 (Tex. 1979); Betts v. Reed, 165 S.W.3d 862, 867 (Tex. App.CTexarkana 2005, no pet.). 
Accordingly, we overrule appellant=s potential arguable grounds for relief based on ineffective
assistance of counsel.[6]

Admission of Hearsay Evidence








In his second potential
arguable ground for relief, appellant=s counsel challenges the trial court=s admission of hearsay evidence. 
At trial, the trial court allowed a caseworker to testify about
statements made by D.D.S.=s mother,
who was not present at trial, that appellant drank and smoked marijuana on a
daily basis, that he was a pimp and used drugs, and that he would manipulate
his mother if she had custody of D.D.S. 
However, appellant admitted on both direct and cross-examination that he
had convictions for DUI and solicitation of prostitution in Oklahoma and that
he had acted as a pimp in the past. 
Appellant also admitted that he had used marijuana as his Adrug of choice.@  Although appellant did not admit to having
control over his mother, D.D.S.=s maternal grandmother testified, without objection, that she talked
to appellant on the phone when D.D.S.=s mother had called him asking for money for D.D.S.  Appellant threatened her, saying that if she Adidn=t stay out
of it, he would kill both@ her and
D.D.S.=s mother.  D.D.S.=s maternal grandmother was so fearful of appellant that she obtained a
protective order against him.  Moreover,
evidence was admitted without objection that placement of D.D.S. with appellant=s mother was not an option because she had failed to cooperate with
Oklahoma child protection authorities in completing a home study.








Although appellant twice
objected on hearsay grounds to the evidence about his drug and alcohol usage,
his working as a pimp, and his manipulation of his mother,[7]
other times the same or similar evidence was admitted without objection, much
of it through appellant=s own
testimony.  Accordingly, we hold that
even if the trial court=s admission
of the evidence constituted an abuse of discretion, appellant was not
harmed.  See Tex. R. App. P. 44.2(b); Volkswagen
of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex. 2004); Richardson,
677 S.W.2d at 501.  We overrule appellant=s second potential arguable ground for relief.

Independent Review of Record








In addition to the matters we
have already addressed, our independent review of the record shows that there
is no error that arguably might support an appeal or require reversal.  There are no jurisdictional errors.  TDFPS had standing to petition for
termination, and the trial court had jurisdiction over the suit.  See Tex.
Fam. Code Ann. ' 102.003(5)
(Vernon Supp. 2005), '' 152.201,
262.001(a), 262.002 (Vernon 2002). 
Further, the order of termination was rendered within the statutory
deadline set forth in family code section 263.401.  See id. ' 263.401(a), (b) (Vernon Supp. 2005). 
The trial court and TDFPS also complied with all other statutory
deadlines.  See id. ' 263.101 (Vernon 2002), '' 263.201, 263.3025 (Vernon Supp. 2005), ' 263.304 (Vernon 2002).

Additionally, after having
reviewed the evidence under the appropriate standards of review, we hold that
it was both legally and factually sufficient to support the trial court=s order.  See City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005) (providing legal sufficiency
standard of review); In re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002)
(same); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002) (providing factual
sufficiency standard of review).

In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the State must establish one or more of the acts or omissions enumerated
under subdivision (1) of the statute and must also prove that termination is in
the best interest of the child.  Tex. Fam. Code Ann. ' 161.001(2); Richardson, 677 S.W.2d at 499; Swate, 72
S.W.3d at 766.  Both elements must be
established; termination may not be based solely on the best interest of the
child as determined by the trier of fact. 
Tex. Dep=t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).








Termination based on section
161.001(E) is proper if clear and convincing evidence shows that the parent
engaged in conduct or knowingly placed the children with persons who engaged in
conduct that endangered the children=s physical or emotional well-being. 
Tex. Fam. Code Ann. ' 161.001(E).  Subsection E
requires us to look at the parent=s conduct alone, including actions, omissions, or the parent's failure
to act.  In re D.M., 58 S.W.3d
801, 811-12 (Tex. App.CFort Worth
2001, no pet.).

AEndanger@ means more than a threat of metaphysical injury or the possible ill
effects of a less‑than‑ideal family environment, but it is not
necessary that the conduct be directed at the child or that the child actually
suffer injury.  Boyd, 727 S.W.2d
at 533.  For instance, physical abuse is
not required when a parent=s omission, such as his or her neglect, has endangered the
children.  Phillips, 25 S.W.3d at
354.  Further, when a parent=s mental state allows him or her to engage in conduct that endangers
the physical or emotional well‑being of the child, that conduct has
bearing on the advisability of terminating the parent's rights.  In re J.I.T.P., 99 S.W.3d 841, 845
(Tex. App.CHouston
[14th Dist.] 2003, no pet.); In re C.D., 664 S.W.2d 851, 853 (Tex. App.CFort Worth 1984, no writ).













Here, appellant admitted that
he had habitually used alcohol and marijuana during his adult life and during
D.D.S.=s life, only quitting when he was sent to a halfway house about sixty
days before the termination hearing; that he had worked frequently as a pimp
since about 1982Calthough he
testified that he had stopped Aa while ago@ as of the
date of trial; that he worked as D.D.S.=s mother=s pimp while
D.D.S. was in her care; that he continued to allow D.D.S.=s mother to care for D.D.S. even though he knew that she had abandoned
D.D.S. twice, the first time leaving him to live with appellant and his mother
when D.D.S. was an infant and the second time when D.D.S. was about a year old
and was removed from his mother=s care while she was working as a prostitute;[8]
that he had been incarcerated for over three years and on parole for almost ten
years for solicitation of prostitution of a minor; that while he was on parole
and participating in TDFPS=s service plan, he committed DUI when following a woman onto an air
force base to Aparty@; and that he=d been
jailed twice for possession of a controlled substance and once for being drunk
in a public place and assaulting a peace officer.[9]  Appellant admitted that he did not visit
D.D.S.=s mother while she was pregnant with D.D.S., and he did not come to
see D.D.S. when he was born.  Appellant
did not give D.D.S.=s mother any
money for support at that time because he did not have a job.  Appellant testified that when he, D.D.S., and
D.D.S.=s mother lived in Nashville for a short time while D.D.S. was still a
baby, he supported D.D.S. by acting as the mother=s pimp.  He estimated that they
made $300 to $500 a day.  He admitted
that it was good for D.D.S. to be away from a lifestyle in which his parents
engaged in prostitution and promotion of prostitution.  Appellant also admitted that he came to Texas
to visit D.D.S. Aon the sly@ when the mother was attempting to regain custody after the first
removal in Tennessee.  Appellant
explained that they hid his visits from TDFPS because one of the requirements
for the mother to have D.D.S. returned was not to have contact with appellant.

Appellant testified that he
has eight other children by three other mothers.  He occasionally gives money to the mother of
two of the children when she asks him. 
One of the children, Giovanni, lives with appellant and his mother, and
appellant supports him.[10]  Appellant said that he did not provide
support to any of the other children. 
Appellant testified that he was working at a steady job; if his rights
were not terminated, he would support D.D.S. and Giovanni, initially living at
his mother=s house but
eventually moving into their own home.








The evidence also showed that
after D.D.S. was removed from his mother the second time, prompting this
termination proceeding, he had problems with nightmares and aggression and
required therapy.  Although his
aggression had improved while he was in foster care, his therapist recommended
continuing therapy. 

This evidence is sufficient
to produce in the mind of the fact finder a firm belief or conviction that
appellant had engaged in conduct or knowingly placed D.D.S. with persons who
engaged in conduct that endangered his physical or emotional well-being.  See Tex.
Fam. Code Ann. '' 101.007,
161.001(E). Accordingly, the evidence is legally and factually sufficient to
support termination of appellant=s parental rights under section 161.001(E).  See id. ' 161.001(E); J.F.C., 96 S.W.3d at 265-66; C.H., 89
S.W.3d at 25.








The evidence is also legally
and factually sufficient to support the trial court=s finding that termination was in D.D.S.=s best interest.  See Holley
v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976); see also C.H.,
89 S.W.3d at 27.  Appellant admitted to
still being at the halfway house and not able to parent D.D.S. at the time of
trial.  Although he said he was Adried out,@ attending
alcohol classes, had just signed up for parenting classes, and was working, he,
D.D.S., and Giovanni would have to live with appellant=s mother until he could find and afford another place for them to
live.[11]  However, a TDFPS caseworker testified that
Oklahoma child protection authorities denied a home study of appellant=s mother because she would not cooperate.  Although appellant=s mother testified that she attempted to work with the caseworker but
that the caseworker never got back to her, the caseworker=s report shows that appellant=s mother was uncooperative.

Appellant did not know much
about D.D.S., including his birthday. 
The evidence shows that appellant has not lived a stable lifestyle.  Although he had a job at the time of trial,
he could make no assurances of future stability other than to explain that he
was trying to make a change in his life. 
Although appellant visited D.D.S. in Texas approximately once every two
weeks from June to December 2004,[12]
he made no other attempts to visit until March 2005.  He never returned to visit after March 2005.








The CASA advocate=s report, which the trial court noted at trial that it had reviewed,
praises D.D.S.=s progress
in foster care because of the secure, stable, and disciplined environment
provided by the foster parents.  A TDFPS
caseworker testified that the foster parents loved D.D.S. and wanted to adopt
him.  He appeared to be bonded with them
and had been living with them for about six months.

At the end of trial, the
judge stated that Athe Court is
very concerned for this child in that this is not the first time this child has
been in CPS custody in two states and on at least two occasions, and that concerns
me greatly for this child and the lack of stability that this child has had in
his life.@  We hold that the evidence is both legally and
factually sufficient to prove that termination was in D.D.S.=s best interest.

Based on the foregoing, we
conclude that there are no arguable grounds that could be raised on appellant=s behalf and that any appeal of this case would be frivolous.

Conclusion

Having disposed of appellate
counsel=s potential arguable grounds for relief and having conducted our own
independent review of the record, we grant appellate counsel=s motion to withdraw and affirm the trial court=s order of termination.

 

PER CURIAM

 

PANEL F:    LIVINGSTON, J.; CAYCE, C.J.; and MCCOY, J.

 

DELIVERED:
August 10, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
trial court also terminated the parental rights of D.D.S.=s
mother, but she has not appealed. 
According to the mother=s counsel and witnesses at
trial, they had not heard from her after her release from the Dallas County
jail.





[3]The
petition seeking termination correctly uses Afather@
instead of Amother@ in
this allegation.  The use of Amother@ in
this section of the order appears to be a typographical error; however, neither
appellate counsel nor the State addresses this issue.  Regardless, it makes no difference to the
outcome of this case because the evidence is sufficient to support termination
under section 161.001(1)(E) of the family code, as discussed later in this
opinion.





[4]466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).





[5]In proceedings
to terminate the parent‑child relationship brought under section 161.001
of the family code, the petitioner must establish by clear and convincing evidence
that the parent committed one or more of the acts or omissions enumerated under
subdivision (1) of the statute and must also prove that termination is in the
best interest of the child.  Tex. Fam. Code Ann. '
101.007 (Vernon 2002), '
161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate
v. Swate, 72 S.W.3d 763, 766 (Tex. App.CWaco 2002, pet. denied).





[6]Although
appellate counsel did not raise this issue, we note that early in the case, the
trial court appointed him as Acitation by publication
attorney ad litem@ to
represent the mother=s
interest.  In that capacity as the mother=s Aattorney
of record,@ he
appeared for the mother at a status hearing and permanency hearing before the
trial court appointed new counsel, which was after the mother was found and
waived service.  However, our review of the
record does not reveal any conflict of interest as a result of appellate
counsel representing mother briefly before trial and appellant on appeal.  Appellate counsel was appointed as an ad
litem so that D.D.S.=s mother
could be served by publication.  Tex. R. Civ. P. 244.  It is unclear whether he had any contact with
D.D.S.=s
mother at all; however, any contact would have necessarily been limited because
after the mother was located at the Dallas County jail, she signed a waiver of
service and request for counsel, and the trial court appointed her new
counsel.  Moreover, after her release
from jail, D.D.S.=s
mother disappeared and did not participate at trial or on appeal.  Accordingly, we conclude that counsel=s
brief representation of D.D.S.=s mother before trial and his
representation of appellant on appeal did not create a conflict of
interest.  See In re B.L.D., 113
S.W.3d 340, 342-43 (Tex. 2003) (A[I]n deciding whether there
is a conflict of interest between parents opposing termination in a single
lawsuit, the trial court must determine whether there is a substantial risk
that the appointed counsel=s obligations to one parent
would materially and adversely affect his or her obligations to the other
parent.@), cert.
denied, 541 U.S. 945 (2004).





[7]The
hearsay regarding appellant=s manipulation of his mother
was the only evidence that appellant=s trial counsel consistently
objected to.  But that evidence is
sufficiently similar to the unobjected-to testimony of D.D.S.=s
maternal grandmotherCthat
appellant was controlling of D.D.S.=s motherCto
militate against a determination of harm, especially in light of the other
unobjected-to evidence about appellant=s drug use and unstable
lifestyle.





[8]This
removal occurred in Tennessee.  D.D.S.
was placed with his maternal grandmother in Texas, and TDFPS worked with the
mother to have D.D.S. returned to her. 
Appellant claims that he supported the mother at this time by helping
her comply with TDFPS=s
requirements for D.D.S. to be returned to her.





[9]Appellant
explained that he was not convicted of the possession charges because both
times he was riding in a car with friends, and the drugs belonged to them.  He also contends that in the public
intoxication and assault case, he was merely walking down the street when the
officer grabbed him by the hair.





[10]When
asked if he could carry insurance for that child and D.D.S., appellant answered
evasively, AI=ll do
fine for them.@ 





[11]Appellant
was making $9 an hour, which the State estimated as approximately $18,000 a
year.  Appellant testified that he had
the opportunity at his current job to be certified in asbestos removal, at
which he could make up to $14.50 an hour.





[12]This
proceeding was filed in April 2004.