IN RE S.W.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-417-CV

IN THE INTEREST OF 

S.W., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Regina W. appeals from the trial court’s order terminating her parental rights in her child S.W.
(footnote: 2)  Regina’s appellate counsel also files an 
Anders 
brief seeking to withdraw as counsel because, in counsel’s professional opinion, there are no non-frivolous issues to appeal.  We agree and, therefore, grant counsel’s motion to withdraw and affirm.

II.  Factual and Procedural Background

Regina W. and her husband Dewayne W. are the biological parents of S.W. and J.W.  The Texas Department of Family and Protective Services (TDFPS) took S.W. into protective custody after J.W. died as a result of traumatic head injuries which were later determined to have been inflicted by Dewayne.
(footnote: 3)  Regina and Dewayne are also the biological parents of three other children, C., T., and M.; however, their parental rights as to these children were previously terminated, and each was subsequently adopted. 

Regina and Dewayne’s storied history with TDFPS began shortly after the birth of their first child C. in 1990.  Over the course of the next four years, TDFPS investigated ten different cases against Regina alleging neglect and physical abuse of both C. and T., as well as two cases against Dewayne alleging physical abuse of T.  Following its investigation, TDFPS entered a “reason to believe” finding in all but one of these cases and eventually took C., T., and M. into protective custody in 1993. 

Regina then gave birth to their other two children, S.W. and J.W., on February 8, 2000 and October 7, 2002 respectively.  It was later determined that S.W., the child at issue in this termination proceeding, was born with a form of autism known as Pervasive Development Disorder.  Eventually, TDFPS began receiving additional referrals of abuse and neglect regarding Dewayne, the first of which arose only one month after J.W. was born.  From 2000 to 2003, TDFPS received two referrals on the family, and TDFPS conducted an investigation into both matters.  However, following its investigation, TDFPS ruled out any form of physical or medical abuse or neglect in the household. However, on May 28, 2004, Regina left both S.W. and J.W. with Dewayne in the couple’s apartment while she went out seeking employment. Regina called Dewayne at approximately 10:30 a.m. to check on the children.  During the course of the conversation, Dewayne informed Regina that J.W. began “to fuss” and hung up the phone so that he could resolve the problem.  Regina again called Dewayne at 4:45 p.m. to inform him that she was on her way home.  When she asked Dewayne how the children were doing, he told her that J.W. was “limp like a noodle” and had “raspy breathing.”  Dewayne explained that he had gotten upset with J.W. because J.W. “had been fussy,” so Dewayne had thrown the child on the floor.  Regina reacted by telling her husband to make sure J.W. continued breathing and that she would be home in about thirty minutes.  Upon arriving home and observing J.W.’s condition, Regina called for help, and emergency responders rushed J.W. to Cook Children’s Medical Center, where the child later died. 

TDFPS conducted an investigation into J.W.’s death and found reason to believe both parents physically abused J.W.  Additionally, TDFPS found reason to believe Dewayne medically neglected J.W. as well as reason to believe Regina was neglectful in her supervision of both J.W. and S.W.  These findings prompted TDFPS to take S.W. into protective custody and seek termination of both Regina and Dewayne’s parental rights. 
 Following Dewayne’s criminal conviction, the termination proceedings commenced via bench trial.  After the presentation of all the evidence, the trial court entered an order terminating Regina’s parental rights, which she now appeals.

III.  
Anders
 Brief

Regina’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders v. California
 by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.  386 U.S. 738, 87 S. Ct. 1396 (1967).  This court has previously held that 
Anders
 procedures apply in parental rights termination cases.  
In re K.M.
, 98 S.W.3d 774, 777 (Tex. App.—Fort Worth 2003, no pet.). 

Once an appellant’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we are obligated to undertake an independent examination of the record and essentially rebrief the case for the appellant to see if there is any arguable ground, in addition to those raised by appellant’s counsel, that may be raised on her behalf.  
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).  Although we gave Regina an opportunity to file a pro se brief, she did not do so.

Despite his belief that Regina has no meritorious grounds for appeal, 
Regina’s counsel raises four potential appellate issues in accordance with his duty under 
Anders.  See Anders,
 386 U.S. at 744, 87 S. Ct. 1402.  These issues include
 whether the evidence presented at trial was legally and factually sufficient to support termination, whether the trial court erred in extending the deadline for dismissal of the case, and whether appellant received effective assistance of counsel.  We address each of these issues in turn.

IV.  Termination of Parental Rights

It is well settled that because of the elevated status of parental rights, due process requires the quantum of proof in a termination proceeding to be elevated from the preponderance of the evidence to clear and convincing evidence. 
 Tex. Fam. Code Ann.
 § 161.001 (Vernon 2002 & Supp. 2006); 
Santosky v. Kramer
, 455 U.S. 745, 769, 102 S. Ct. 1388 (1982)
; In re J.F.C., 
96 S.W.3d 256, 263 (Tex. 2002)
. 
 
The Texas Family Code defines clear and convincing evidence as the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  
Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).  Therefore, to terminate the parent-child relationship under section 161.001 of the Texas Family Code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Id.
 § 161.001.  In such cases, termination can not be based solely on a finding by the trier of fact that the termination is in the best interest of the child.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).  Rather, both elements must be established for the termination to be proper under Texas law.  
Id. 

A.  Standards of Review

This higher burden of proof in termination cases alters the appellate standard for both legal and factual sufficiency reviews.  
J.F.C.
, 96 S.W.3d at 265 (discussing legal sufficiency review); 
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review); 
In re J.T.G.
, 121 S.W.3d 117, 124 (Tex. App.—Fort Worth 2003, no pet.).  Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof.  
J.F.C.
, 96 S.W.3d at 265-66; 
C.H.
, 89 S.W.3d at 25; 
J.T.G.
, 121 S.W.3d at 124.

Accordingly, in reviewing the evidence for legal sufficiency in parental termination cases, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.  
J.F.C.
, 96 S.W.3d at 266.  In conducting our review, we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  
Id.  
Additionally, we must disregard all evidence that a reasonable trier of fact could have disbelieved; however, we must consider undisputed evidence even if it does not support the finding.  
Id.
  If, after conducting our review, we determine that no reasonable trier of fact could have formed a firm belief or conviction that its finding was true, then we must conclude that the evidence is legally insufficient.  
Id.

In determining factual sufficiency of the evidence, we must give due consideration to evidence that the trier of fact could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the provisions of section 161.001 and that the termination of his or her parental rights would be in the child’s best interest.  
Tex. Fam. Code Ann.
 § 161.001; 
C.H.
, 89 S.W.3d at 25.  
We must also consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding.  
J.F.C.
, 96 S.W.3d at 266.  If the disputed evidence is of such magnitude that a trier of fact could not reasonably have formed a firm belief or conviction that its finding was true, then the evidence is factually insufficient.  
Id.
 

B.  Legal and Factual Sufficiency Analysis

In the first two potential points, Regina’s counsel raises legal and factual insufficiency of the evidence to support termination of Regina’s parental rights. The trial court terminated Regina’s parental rights in S.W. based upon its finding that she violated family code subsections 161.001(1)(D), (E), and (M).
(footnote: 4)  Tex. Fam. Code Ann.
 §§ 161.001(1)(D), (E), (M).  We assume for purposes of this appeal that counsel’s challenge extends to all three grounds for termination found by the trial court.

1.  Endangerment Findings

In order to terminate the parent-child relationship on endangerment grounds under section 161.001(1)(D), TDFPS had to prove that Regina (1) knowingly (2) placed or allowed S.W. to remain (3) in conditions or surroundings that endangered S.W.’s physical or emotional well-being.  
Tex. Fam. Code Ann.
 § 161.001(1)(D).  Endangerment, as that term is used in the statute, means to expose to loss or injury, to jeopardize.  
Boyd
, 727 S.W.2d at 533
;
 J.T.G.
, 121 S.W.3d at 125; 
see also
 
In re M.C.
, 917 S.W.2d 268, 269 (Tex. 1996).  Under section 161.001(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child’s physical well-being was the direct result of the parent’s conduct, including acts, omissions, or failures to act.  
J.T.G.
, 121 S.W.3d at 125; 
see 
Tex. Fam. Code Ann.
 § 161.001(1)(E).  Additionally, termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.  
J.T.G.
, 121 S.W.3d at 125; 
see
 
Tex. Fam. Code Ann.
 § 161.001(1)(E).  However, it is not necessary that the parent’s conduct be directed at the child or that the child actually suffer injury.  
Boyd
, 727 S.W.2d at 533
;
 J.T.G.
, 121 S.W.3d at 125.  
The specific danger to the child’s well-being may be inferred from parental misconduct standing alone.  
Boyd
, 727 S.W.2d at 533; 
In re R.W.
, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).  

To determine whether termination is necessary, courts may look to parental conduct both before and after the child’s birth.  
In re D.M.
, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).  Stability and permanence are paramount in the upbringing of a child.  
See In re T.D.C.
, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh’g).  A factfinder may infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent.  
See In re D.L.N.
, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), 
disapproved on other grounds by J.F.C.
, 96 S.W.3d at 256,
 and 
C.H.
, 89 S.W.3d at 17.  Moreover, evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child’s well-being.  
J.T.G.
, 121 S.W.3d at 133.  While imprisonment alone does not constitute a continuing course of conduct that endangers the physical or emotional well-being of a child, it is a fact properly considered on the issue of endangerment.  
Boyd
, 727 S.W.2d at 533-34
;
 R.W.
, 129 S.W.3d at 743-44.  Because the evidence concerning these two statutory grounds for termination are interrelated, we consolidate our examination of them. 
 J.T.G.
, 121 S.W.3d at 126.

The record reflects that Regina was aware of her husband’s violent and abusive tendencies and that she was, in fact, afraid of him long before J.W.’s death.  On one occasion, Dewayne slapped Regina, giving her a bloody nose after she refused to take out their cat’s litter box.  Through her written and oral statements to investigators following J.W.’s death, Regina acknowledged that Dewayne had been hitting the children with a willow stick as a means of punishment.  Additionally, former TDFPS caseworker Courtney Shallenberger testified that Dewayne admitted to her that in November of 2003, while wearing a metal brace on his hand, he hit S.W., leaving a bruise on the child’s thigh.  Julie Nash Evans, a former investigator with TDFPS, also testified that, following J.W.’s death, she conducted an interview with Regina in which Regina discussed with her prior instances in which Dewayne left marks or bruises on the children.  A long bone scan done on J.W. upon arriving at the hospital the night the child died revealed several healing fractures, which were indicative of past physical abuse.  The record also reveals that Dewayne had a prior criminal conviction for armed robbery for which he served a twenty-six month sentence.   

Susan Spangler, another former investigator with TDFPS, testified that during the course of her investigation of a referral regarding C. in December of 1990, both parents admitted to her that on several occasions they had taped a pacifier to the infant’s mouth or put an ounce of whiskey in the child’s bottle to prevent C. from crying.  Spangler also testified that in January of 1991, another referral involving Regina arose after C. was admitted to the hospital with one black eye and bruising on both sides of the face.  During questioning, Regina stated to Spangler that the child would not stop crying and that this triggered a flashback to her own sexual abuse suffered at the hands of her father when she was a child.  Regina told Spangler that she saw images of her father during the flashback and that she reacted by slapping C. in the face for approximately two minutes.  Regina later admitted these facts on cross-examination.  

The record also indicates that Regina attempted on multiple occasions in the past to admit her children to area hospitals when the children were not in need of medical treatment.  This prompted two doctors to inform TDFPS of their belief that Regina suffered from Munchausen by Proxy.  Norma Bartholomew, a counselor providing therapeutic services to Regina, also testified that Regina has displayed traits typically associated with narcissism during the course of their therapy sessions.  Additionally, the evidence shows that Regina continues to take medication as a means of treating her depression and anxiety. 

After carefully reviewing the entire record, looking at the evidence in the light most favorable to the trial court’s findings and giving due consideration to the evidence that the trial court, as factfinder, could reasonably have found to be clear and convincing, we hold that the court reasonably could have formed a firm belief or conviction that Regina knowingly placed S.W. in conditions and engaged in conduct that endangered the child’s physical or emotional well-being.  
See
 
Tex. Fam. Code Ann. 
§ 161.001(1)(D), (E); 
J.F.C.
, 96 S.W.3d at 256-66
; 
C.H.
, 89 S.W.3d at 25; 
J.T.G.
, 121 S.W.3d at 124.  Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court’s findings on endangerment. 

2.  Best Interest Finding

Counsel’s sufficiency challenge also encompasses the trial court’s finding that terminating Regina’s parental rights was in S.W.’s best interest.  There is a strong presumption that the best interest of a child is served by keeping the child with the biological parents.  
Tex. Fam. Code Ann.
 §§ 153.131(b), 153.191, 153.252 (Vernon 2002); 
In re W.E.C.
, 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.).
  However, this presumption may be rebutted by clear and convincing evidence indicating the biological parents’ present unfitness.  
D.M.
, 58 S.W.3d at 814
.
  In determining the best interests of a child, a factfinder may consider a number of factors.  
Holley v. Adams
, 544 S.W.2d 367, 372 (Tex. 1976).  These factors include:  (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 
 Id. 
at 371-72.  Some of these factors may be inapplicable in some cases while other factors not listed here may also be considered when appropriate.  
C.H.
, 89 S.W.3d at 27.

With regard to the first factor, although S.W. did not testify at trial, testimony indicated that, early on, S.W. looked forward to Regina’s visits, and the child became upset when visitation ended.  However, it was also revealed that over time, S.W. developed a stronger bond to the foster mother and that he began gravitating toward her rather than Regina in later visits.  Regarding the second factor—the child’s present and future physical and emotional needs–Troyce Smedema, S.W.’s therapist since 2004, confirmed that S.W. suffers from autism and displays symptoms typically associated with ADHD.  The record indicates that, despite being five years of age, developmentally S.W. functioned at the time of trial at a level between the ages of 18 and 24 months. Additionally, the record shows that S.W. requires psychotropic medication and a very structured home environment, as transitions have proven to be extremely difficult for the child.  Regarding the third factor–the present and future physical and emotional dangers to the child–Smedema opined that should S.W. be forced to reside in an environment that lacks sufficient structure and stability, such as a homeless shelter, the child’s mental health would almost certainly deteriorate.  The evidence shows that since 2000, Regina has moved in and out of local homeless shelters and has been unable to maintain a stable residence for S.W. for any significant period of time.  

Regarding Regina’s parenting abilities–the fourth 
Holley
 factor–the record demonstrates that Regina failed to demonstrate adequate parental abilities.  Regina only completed one of a number of parenting classes recommended by TDFPS in this case.  She admitted to TDFPS investigators that she and her husband had taped a pacifier to a prior child’s mouth and put whiskey in that child’s bottle to prevent the child from crying.  As to the fifth factor, although TDFPS informed Regina of various parenting classes that could assist her, Regina failed to complete three out of four of these classes.  Regarding TDFPS’s plans for the child–the sixth factor–TDFPS sought to be named managing conservator of the child and plans to seek a structured adoptive home for S.W.  The record indicates that Regina informed a TDFPS caseworker that should S.W. be returned to her, she plans on placing S.W. in a 24-hour child care facility while she continues to work as a night crew clerk.  However, Regina testified that she intended to either move to the day shift or seek employment in home health care so that she may be available to provide for S.W.’s needs. 

As to the stability of the home or proposed placement–the seventh 
Holley 
factor–TDFPS indicated, through its representatives, that the agency is looking to place S.W. primarily with a young couple to ensure that S.W. remains in a stable environment and continues to receive adequate care for years to come.  Regina admitted on cross-examination that she has lived in eleven different locations since 2000 alone.  Moreover, with regard to the eighth factor, the record, as outlined above, provides evidence of numerous acts or omissions by Regina that support the trial court’s finding that termination of her parental rights is in S.W.’s best interest. 

Finally, concerning the ninth factor–any excuse for the parent’s acts or omissions–Regina attempted to justify her abusive conduct by pointing at the sexual abuse she suffered as a child at the hands of her father.  Although Regina provided no excuse for her failure to protect her child from her abusive husband, she did explain her reason for staying with Dewayne by stating that she chose to stay because she feared he would react violently should she attempt to leave the relationship.  

Looking at all the evidence in the light most favorable to the best interest finding, we hold that a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.  
J.F.C.
, 
96 S.W.3d at 266; 
J.T.G.
, 
121 S.W.3d at 124-25.  Additionally, giving due consideration to evidence that the factfinder could have found to be clear and convincing, and based on our review of the entire record, we hold that a reasonable trier of fact could have formed a firm belief or conviction that the termination of Regina’s parental rights would be in S.W.’s best interest. 
 See W.E.C.
, 
110 S.W.3d at 247.
  Therefore, we hold that the evidence is legally and factually sufficient to support the trial court’s best interest finding.

V.  Extension of Dismissal Deadline

In the third possible point for appeal, Regina’s counsel contends that the trial court improperly extended the dismissal deadline in violation of the family code. 
 See 
Tex. Fam. Code Ann.
 § 263.401(a) (Vernon 2002 & Supp. 2006).  Section 263.401 of the Texas Family Code provides that, unless the trial court has rendered a final order on the first Monday after the first anniversary of the date the court appointed TDFPS as temporary managing conservator in a suit affecting the parent-child relationship, the court “shall dismiss” a suit filed by TDFPS that seeks to terminate the parent-child relationship. 
 Id.
  The statute also provides that the trial court may extend this deadline for up to 180 days if, by the Monday after the first anniversary date, the court finds that continuing TDFPS’s conservatorship of the child is necessary and in the child’s best interest.  
Id. §
 263.401(b).  Additionally, upon making such a finding, the statute requires the court to render an order that complies with section 263.401(b). 
 Id.  

To render an order that complies with section 263.401(b), the trial court is required to schedule a new date for dismissal of the suit, make further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit, and set a final hearing on a date that allows the court to render a final order before the required date for dismissal of the suit.  
Id.
  If the trial court grants an extension, but does not render a final order within the 180-day period, it must dismiss the suit.  
Id.
 § 263.401(c).  A party may, however, waive the right to object to the trial court’s failure to comply with these statutory deadlines.  
See id. 
§
 263.402(b) (Vernon 2002).  A party who fails to make either a timely motion to dismiss the suit or request that the court render a final order before the deadline for dismissal waives the right to object to the court’s failure to dismiss the suit. 
 Id.

In this case, the trial court entered an order naming TDFPS temporary conservator of S.W. on June 10, 2004.  TDFPS then filed a motion to extend the dismissal date, which the trial court granted on April 18, 2005 without any objection by Regina.  In its order, the court extended the dismissal deadline to December 3, 2005 and set the case for trial on October 4, 2005.  Following trial, the court entered its order terminating the parent-child relationship between Regina and S.W. on October 6, 2005. 

After reviewing the record, we conclude that the trial court acted within the time limits set out in the Texas Family Code.  
See id. 
§ 263.401(a), (b).  Following the trial court’s appointment of TDFPS as S.W.’s temporary managing conservator on June 10, 2004, the court had, by statute, until June 13, 2005 to either enter a final order or grant an extension of the dismissal deadline.  
See id. 
§ 263.401(a)
.  
The trial court granted TDFPS’s request for an extension of the dismissal deadline on April 18, 2005 without objection, thereby satisfying the statutory requirement.  T
he court’s order also went on to set December 3, 2005 as the final dismissal date, well within the 180-day extension period provided for by statute.  
See id.
 § 263.401(b).  We therefore hold that the trial court properly extended the dismissal deadline.

VI.  Ineffective Assistance of Counsel

In the fourth possible point, Regina’s counsel asserts that her trial counsel rendered ineffective assistance by failing to preserve sufficiency claims for appeal, failing to object to TDFPS’s request to extend the dismissal deadline, and failing to seek dismissal of the case prior to the passage of the original one-year deadline.  The Texas Supreme Court has held that “the statutory right to counsel in parental-rights termination cases embodies the right to effective counsel.”  
In re M.S.
, 115 S.W.3d 534, 544 (Tex. 2003);
 see 
Tex. Fam. Code Ann.
 § 107.013(a)(1) (Vernon Supp. 2006).  In analyzing the effectiveness of counsel in termination cases, we follow the two-pronged test that was set forth by the United States Supreme Court in 
Strickland v. Washington.
 
 
466 U.S. 668, 687, 104 S. Ct. 2052, 2062 (1984).  To show ineffectiveness, the appellant must show that counsel’s assistance fell below an objective standard of reasonableness and that counsel’s deficient assistance, if any, prejudiced the defendant.  
See M.S.
, 115 S.W.3d at 545
.  In evaluating ineffective assistance claims, courts must give great deference to counsel’s performance and indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel’s conduct was strategic. 
 Id.
  It is only when the conduct was so outrageous that no competent attorney would have engaged in it that the challenged conduct will constitute ineffective assistance. 
 Id.

As to the potential argument that trial counsel rendered ineffective assistance by failing to preserve sufficiency complaints for appeal, there is no such requirement.  Because this was a bench trial, there was no need to preserve legal and factual sufficiency issues for appeal.  
Tex. R. App. P.
 33.1(d);  
Tex. R. Civ. P.
 324(a)-(b); 
Kissman v. Bendix Home Sys., Inc.
, 587 S.W.2d 675, 677-78 (Tex. 1979); 
Betts v. Reed
, 165 S.W.3d 862, 867 (Tex. App.—Texarkana 2005, no pet.).  Additionally, the remaining grounds underlying counsel’s ineffective assistance argument are rendered meritless because appellant is unable to show prejudice as a result of our finding the evidence legally and factually sufficient to support the trial court’s termination finding. 
 In re J.W.
, 113 S.W.3d 605, 616 (Tex. App.—Dallas 2003, pet. denied). 

VII.  Conclusion

After independently reviewing the record, we agree with appellate counsel’s determination that any appeal from this case would be frivolous.  Accordingly, we grant appellate counsel’s motion to withdraw and affirm the trial court’s judgment. 

PER CURIAM

PANEL F: GARDNER, HOLMAN, and WALKER, JJ.

DELIVERED:  October 19, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The trial court order also terminated the parental rights of S.W.’s father Dewayne W., however, he has not appealed the termination order. 

3:
Dewayne was convicted of injury to a child with serious bodily injury as a result of J.W.’s death and was sentenced to sixty years’ imprisonment. 

4:
Under these provisions, a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the termination is in the child’s best interest and the parent has:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; 

. . . . 

(M) had his or her parent-child relationship terminated with respect to another child based on a finding that the parent’s conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state.